**UNITED STATES, Appellee,**

v.

**James L. McNALLY, Private First Class,
U.S. Army, Appellant.**

**No. 41,167.
SPCM 15517.**

U. S. Court of Military Appeals.

July 5, 1983.

For Appellant: *Colonel Edward S. Adamkewicz, Jr., Major Elliot J. Clark, Jr., Captain Kenneth G. Gale* (on petition).

For Appellee: *Colonel R.R. Boller, Major John T. Meixell, Captain Robert D. Higginbotham* (on petition).

Opinion of the Court

PER CURIAM:

A special court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of possession of two ration cards contrary to a USAREUR Regulation, and possession of .0752 grams of heroin, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 5 months, forfeiture of $298 pay per month for 5 months, and reduction to pay grade E–1. Pursuant to a pretrial agreement, the convening authority reduced the confinement to 60 days and the period of forfeitures to 2 months, but in all other respects he approved the trial results. The Court of Military Review affirmed in an unpublished Memorandum Opinion.

In this Court, appellant renews an argument he made for the first time in the intermediate court—namely, that his trial defense counsel erred in expressly urging the military judge to consider a bad-conduct discharge as an appropriate punishment for his transgressions. 11 M.J. 464 (1981). Under the circumstances of this case, we agree.

We recently had occasion to discuss the propriety of a concession by defense counsel in his presentencing argument that a punitive discharge would be an appropriate element of the sentence. *United States v. Volmar*, 15 M.J. 339 (C.M.A.1983). At Volmar's general court-martial, his defense counsel conceded the appropriateness of a bad-conduct discharge and suggested that such a discharge and a period of confinement of less than a year would be suitable for the accused. Under the circumstances of that case—where Volmar might reasonably have expected a dishonorable discharge and rather lengthy confinement since reten-

tion in the service was not really a reasonable alternative—we concluded that defense counsel had acted properly in accepting the realistic certainty of a punitive discharge and in attempting simply to cut his client's losses. We recognized, "In arguing as to sentence, counsel—whether for the Government or for the accused—can be most effective by proposing to the sentencing authority an alternative for which there is some reasonable possibility of acceptance." *Id.* at 342. Accordingly, defense counsel in *Volmar* did not err in conceding the appropriateness of a bad-conduct discharge under the circumstances, and the military judge did not err by not interrupting defense counsel's argument and inquiring of the accused whether the concession conformed to his wishes.

Here, however, the circumstances are significantly different. Since the trial was by special court-martial, there was no possibility that appellant would have suffered a discharge more onerous than a bad-conduct discharge. Further, the events surrounding the offenses themselves do not compel the conclusion that a bad-conduct discharge was inevitable. Appellant had explained in his unsworn statement through counsel that his purchase in the local community of this rather small portion of heroin was his first exposure to such activity. Concerning the ration cards, appellant had explained during the providency inquiry that, after losing the card originally issued to him, he had obtained a replacement and, when the first card was returned to him by mail, he had failed to return the replacement and, instead, simply kept both of them together in his wallet. Appellant, in his service of over one and one-half years in the Army, had no prior convictions by court-martial and, while he did have a record of four nonjudicial punishments under Article 15 of the Code, 10 U.S.C. § 815, all were for relatively minor transgressions. At no time during his unsworn statement did appellant imply that he desired separation from the Army.

Noting in his sentencing argument that the drug offense for which McNally was being court-martialed was appellant's "first excursion into this area," defense counsel suggested: "Lucky for him, lucky for the Army, possibly the best thing that will come out of this court from this incident is hopefully the accused has been shocked with this brush with the law, with this conviction that he has already sustained, in that he will never again adventure into the area of drugs." Notwithstanding this seemingly ideal preface for urging the military judge to give his client a second chance in the service, defense counsel immediately then argued, "The defense asks the court to consider that a bad-conduct discharge, with its permanent detrimental effect, is a proper punishment in this case." It is true that counsel then proceeded to ask that no confinement be imposed. However, in light of all the circumstances of the case—including the facts that appellant's vulnerability to confinement had been limited by a pretrial agreement to 60 days and that the lasting effects of a punitive discharge are severe and have long been recognized as such by this Court—we conclude that counsel erred in conceding the appropriateness of a bad-conduct discharge, without any indication on the record that he was doing so pursuant to his client's wishes. *See United States v. Webb,* 5 M.J. 406 (C.M.A.1978); *United States v. Holcomb,* 20 U.S.C.M.A. 309, 43 C.M.R. 149 (1971); *United States v. Garcia,* 18 U.S.C.M.A. 75, 39 C.M.R. 75 (1968); *United States v. Richardson,* 18 U.S.C.M.A. 52, 39 C.M.R. 52 (1968); *United States v. Mitchell,* 16 U.S.C.M.A. 302, 36 C.M.R. 458 (1966). Prejudice is apparent.

The decision of the United States Army Court of Military Review is reversed as to the sentence. The record of trial is remanded to the Judge Advocate General of the Army for submission to a convening authority who may either approve a sentence which does not include a bad-conduct discharge or order a rehearing on sentence.

COOK, Judge (concurring in the result):

After trial counsel argued that the accused was "not worthy of being in the Army" and should "be made an example of in the Berlin Command," defense counsel replied:

Your honor, as the trial counsel stated, the accused has been in the Army only a short period of time, and yet he has managed to accumulate some Articles 15 that have been admitted before this court. I'm sure that the court's perusal of these Articles 15 will show that they are not particularly aggravating offenses. They show minor dereliction and minor misconduct over the period of time he has been in the service. The incident, the reason why we are here before this court today, is the first aggravated, or more serious incident, that this man has been involved with. He is a young individual. He is 19 years old, immature, and misguided. He is not a heroin addict. He is not a heroin dealer. As luck would have it, he was apprehended on his first excursion into this area. Lucky for him, lucky for the Army, possibly the best thing that will come out of this court from this incident is hopefully the accused has been shocked with this brush with the law, with this conviction that he has already sustained, in that he will never again adventure into the area of drugs. The defense asks the court to consider that a bad conduct discharge, with its permanent detrimental effect, is a proper punishment in this case. The accused will live with this for the remainder of his life, also, with the conviction that [he] has already sustained. The defense asks that the judge consider a bad conduct discharge as appropriate punishment, and that confinement at hard labor is not appropriate, that when considering the needs of society, of the individual, that it is not necessary to put this man in jail to remind him of what he has done wrong. It is not necessary to put him in jail to serve as a deterrent to others. The awarding of a bad conduct discharge, the permanent stigmatization that goes along with that discharge should be appropriate. Confinement at hard labor is not necessary nor warranted.

Reading this in consonance with the fact that the accused pleaded guilty, waived trial by members, fully cooperated with the Government by stipulating to facts and the chain of custody of exhibits, and bargained for a pretrial agreement limiting punishment to a bad-conduct discharge, confinement at hard labor for 60 days, forfeiture of two-thirds pay per month for 2 months and reduction to E–1, it could well be supposed that the thrust of defense counsel's argument was to convince the military judge that a bad-conduct discharge *alone* was sufficient punishment to the exclusion of other allied accompanying punishments such as confinement at hard labor or forfeitures. If such a supposition were correct, then this case would fall within the parameters of our recent decision in *United States v. Volmar,* 15 M.J. 339 (C.M.A.1983). There we recognized that defense counsel might well argue for a bad-conduct discharge in the face of the likelihood that his client would receive a dishonorable discharge and approved such a tactical judgment of counsel. But we also cautioned:

> Our earlier cases concerned a situation where there appeared to be a reasonable likelihood that court members might consider retention in the service as an alternative to a punitive discharge. This situation often exists in trials by special courts-martial, which involve less serious offenses. Under such circumstances we have considered it important to assure that an accused is aware of the potential ramifications of receiving a bad-conduct discharge and that his counsel does not argue for such a sentence unless the accused understands the consequences and is in accord therewith.

*Id.* at 343 (footnote omitted).

On the face of this record I cannot fault defense counsel for his tactical judgment. We are aware that the Army deals harshly with those accused involved in "hard drugs" such as heroin. Counsel undoubtedly was aware of this policy and may well have tried to select the quantum of punishment best suited to the needs of the accused as well as that which had a reasonable chance of being acceptable to the sentencing authority, the military judge. I also find support for this supposition in the additional facts that defense counsel submitted no re-

sponse to the review of the staff judge advocate, *see United States v. Goode,* 1 M.J. 3 (C.M.A.1975), nor did he submit any petition for clemency, *see* Article 38(c), Uniform Code of Military Justice, 10 U.S.C. § 838(c). However, it is not the tactical judgment of the trial defense counsel that is on trial; it is the accused. My supposition as to defense counsel's motives does not suffice to remove the lacuna in the record as to the wishes of the accused concerning imposition of a bad-conduct discharge. I fault the military judge for not making inquiry on the record to determine whether the accused concurred with the argument of his counsel for a bad-conduct discharge. *See United States v. Blunk,* 17 U.S.C.M.A. 158, 37 C.M.R. 422 (1967); *United States v. Mitchell,* 16 U.S.C.M.A. 302, 36 C.M.R. 458 (1966); *cf. United States v. Hampton,* 16 U.S.C.M.A. 304, 36 C.M.R. 460 (1966). Certainly this matter could have been clarified by no more than two questions by the military judge. *United States v. Mitchell, supra.* In a judge-alone trial, this would certainly have caused no significant interruption of the proceedings and would have avoided the action we take today. However, those questions were not asked, and we are left with "misgivings" from our perusal of the record which require our reversal. *United States v. Holcomb,* 20 U.S.C.M.A. 309, 311, 43 C.M.R. 149, 151 (1971). We, too,

> would like to avoid any tendency to be so paternalistic toward counsel's tactics that they are limited to an unimaginative approach in which only commonplaces and threadbare arguments are acceptable. Our inclination with counsel is to give them their head.

But our acceptance of counsel's right to select such trial tactics as he, with his peculiar wisdom, may deem best must be balanced against the right of the accused to participate in such ultimate trial decisions. Absent some indication in the record that the accused agreed with his counsel's selection of punishment, we cannot substitute our suppositions of the accused's desires. *Cf. United States v. Richard,* 21 U.S.C.M.A. 227, 44 C.M.R. 281 (1972). I therefore concur in the result.