### UNITED STATES
v.

Forrest ADAMS, Jr., 465 35 1369, Seaman Apprentice (E–2), U.S. Navy.

NMCM 83 1675.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 1 Feb. 1983.

Decided 29 Sept. 1983.

LCDR Jeanne Carroll, JAGC, USN, Appellate Defense Counsel.

LT Brian M. Madden, JAGC, USNR, Appellate Defense Counsel.

LCDR D.L. Kelly, JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and GARVIN, JJ.

GARVIN, Judge:

This case was initially appealed on the grounds that a bad-conduct discharge is inappropriately severe for appellant. This Court requested supplemental briefs on the following specified issue:

WHETHER TRIAL DEFENSE COUNSEL, IN EFFECT, CONCEDED THAT A BAD–CONDUCT DISCHARGE WAS APPROPRIATE BY ARGUING FOR A SUSPENDED BAD–CONDUCT DISCHARGE AND THEREBY DEPRIVED APPELLANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL. *UNITED STATES V. WEBB,* 5 M.J. 406 (CMA 1978). *SEE ALSO, UNITED STATES V. VOLMAR,* 15 M.J. 339 (CMA 1983).

## A. Background

Appellant stands convicted: of the wrongful possession of marijuana in Olongapo City, Republic of the Philippines, in October 1982; of the wrongful introduction of marijuana into the USS CAYUGA (LST–1186) in October 1982; of the introduction of marijuana into that ship for the purpose of sale; of the sale of marijuana to a seaman recruit while on board the ship on 7 October 1982; and of one other on-board sale on 11 October 1982.

Appellant also had a captain's mast in March of 1983 for, among other offenses, the possession of a controlled substance in violation of Article 92, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 892. This captain's mast occurred after the appellant was released from his pretrial restriction, and after the present charges were referred for trial by special court-martial. Appellant had previously entered into a pretrial agreement wherein he had bargained for and agreed to a sentence which permitted the convening authority to approve a punitive discharge, if awarded, but provided for suspension of the greater portion of the confinement and forfeitures which could have been awarded.

At trial, appellant made an unsworn statement which included the following pertinent remarks:

I fully understand that the charge against me is very serious. And I know now how serious the CNO [Chief of Naval Operations] is on drug.... I guess I was hanging around with the wrong people on my ship which could get me into trouble.... And now I know what I'm facing, and after what's happened, I definitely have to quit smoking marijuana. ... I cooperated fully with ... the NIS to turn in three of the major drug dealers aboard my ship so other people on my ship wouldn't have to face the same thing that I am facing right now. What I'm trying to say is that I want to stay in the Navy, sir. I don't want a BCD [bad-conduct discharge]. I like the Navy.... And I'll take anything except a BCD, sir.

R. 27, 28.

Appellant stipulated to the testimony of a first class petty officer, his ship-board supervisor. The stipulation was that, if called for sentencing, the first class petty officer would testify that appellant would produce fine results for his ship and the Navy with a court-martial *suspended* sentence. We choose not to play at semantics and we recognize this as an obvious reference to a suspended discharge. The stipulation was agreed to on the same day appellant negotiated the pretrial agreement and trial defense counsel was obviously aware of these facts when he used them to argue for a suspended bad-conduct discharge.

During the argument, trial defense counsel asserted that appellant and his supervisor requested a suspended bad-conduct discharge. The military judge interrupted the defense argument on sentencing:

I don't mean to interrupt but I'm sure you understand that I'm not in a position to suspend a punitive discharge. All I can do is recommend that if I impose one.

DC: Yes, Your Honor.

R. 29.

Trial defense counsel then continued to argue for the trial judge to recommend suspension of a bad-conduct discharge because of appellant's cooperation with authorities, including his voluntary offer of testimony against suppliers of drugs. De-

fense counsel closed by arguing that the impact of the court-martial had caused appellant to see the light.

The trial judge did, in fact, recommend that the discharge be suspended for a period of one (1) year.

## B. Appellant's position

The appellant relies on *United States v. Webb,* 5 M.J. 406 (CMA 1978), *United States v. Volmar,* 15 M.J. 339 (CMA 1983), and *United States v. McNally,* 16 M.J. 32 (CMA 1983), to support his contention that he was denied the effective assistance of counsel at trial because his trial defense counsel conceded, during the argument for sentencing, that a bad-conduct discharge was appropriate. *United States v. McNally, supra,* held that defense counsel erred when he conceded the appropriateness of a bad-conduct discharge absent any indication that such concession was made with the client's approval. *United States v. Volmar, supra,* held that there was no error when the defense counsel conceded the appropriateness of a bad-conduct discharge at a general court-martial. However, the Court did observe that there was no reasonable likelihood that the sentencing authority would consider retention, and the Court further noted that the defense counsel persuasively argued against the dishonorable discharge which was sought by the Government. *United States v. Webb, supra,* held that defense counsel's argument, requesting a suspended discharge, was error where the record reflected the defendant's desire to be retained.

Appellant relies on these holdings and argues that his trial defense counsel misstated his desires when counsel requested that the court recommend that a bad-conduct discharge be suspended. He takes the position that the foregoing cases are controlling and requests that the bad-conduct discharge be disapproved. He contends that trial defense counsel's argument amounts to the ineffective assistance of counsel.

## C. Sentence

As previously stated, the trial judge interrupted defense counsel's argument and interjected, "I'm not in a position to suspend a punitive discharge. All I can do is recommend that if I impose one." Trial defense counsel acknowledged this but continued to argue for the recommendation by highlighting appellant's cooperative and penitent attitude which was reflected by appellant's offer to identify and assist in prosecuting drug dealers on board his ship. He noted appellant's desire to be retained and argued that the court-martial had caused appellant to finally see the light.

The trial judge sentenced appellant:

To be confined at hard labor for a period of three (3) months;

To forfeit $300.00 per month for a period of three (3) months;

To be reduced to pay grade E–1; and

To be discharged from the Navy with a bad-conduct discharge.

He stated:

I am recommending that the discharge be suspended for a period of one (1) year. R. 30.

The convening authority approved the sentence and suspended confinement at hard labor in excess of 45 days and forfeitures in excess of $300.00 pay per month for one month pursuant to the pretrial agreement. He did not follow the recommendation of the trial judge to suspend the bad-conduct discharge.

The supervisory authority considered the recommendation of the trial judge and trial defense counsel's post-trial petition for clemency, which contained another request for suspension of the bad-conduct discharge. Nevertheless, the supervisory authority approved a sentence which included an unsuspended bad-conduct discharge. He did adjust the forfeitures to comply with the maximum monthly forfeiture authorized.

On his appellate rights statement, appellant elected to relieve his detailed trial defense counsel of all further representation in his case. He did not request representation by appellate defense counsel. In spite of this, his trial defense counsel continued his attempts to have the punitive discharge

suspended in the review process. As the case stands, the trial defense counsel achieved exactly what he sought, and what he could reasonably expect on behalf of appellant.

### D. Discussion

The Government has taken the position that defense counsel's argument for a recommendation to suspend a bad-conduct discharge is not error because there was virtually no chance that the trial court would have awarded a sentence which did not include a bad-conduct discharge.

In *United States v. Webb, supra,* a general court-martial, the trial defense counsel argued for suspension of any discharge—which was beyond the military judge's power. The Court of Military Appeals (COMA) noted that there was no indication in the record that the trial judge would not take defense counsel's concession as to the appropriateness of a discharge into account and found a fair risk that the "improper argument" influenced the trial judge on sentencing. A rehearing on sentence was authorized, even though appellant was convicted of the possession and sale of lysergic acid diethylamide (LSD).

Judge Cook dissented in *United States v. Webb, supra,* and in doing so, cited *United States v. Occhi,* 2 M.J. 60 (CMA 1976), which held that a military judge has no power to suspend a sentence. Judge Cook, who had authored *Occhi,* stated in his *Webb* dissent that the *Occhi* decision "did not turn defense counsel's plea for a suspended sentence into a request for a sentence contrary to that acceptable to the accused." *Webb, supra* at 408.

*United States v. Volmar, supra,* was also a general court-martial. It involved, among other things, the wrongful use of marijuana and the wrongful transfer of cocaine. This case was decided in 1983, some 5 years after *Webb.* In *Volmar* COMA held that defense counsel's concession of the appropriateness of a punitive discharge was not error. To reach the holding, the Court reviewed the leading cases relating to trial defense counsel's argument on sentencing and concluded:

In summary, then, these cases hold that a sentence must be set aside if (1) there is some evidence in the record which fairly indicates that the accused desires to be retained in the service despite his conviction, and (2) the defense counsel had argued that a punitive discharge was appropriate punishment for the accused, or at least had made certain remarks that could be so construed. Under such circumstances, we have repeatedly ruled that there is ineffective assistance of counsel, and we in no way question the correctness of those earlier rulings.

*Volmar, supra* at 341.

The *Volmar* Court then went on to observe that defense counsel's comments must not be viewed in the abstract. It quoted at length the Government's argument which requested two to three years' confinement and a dishonorable discharge. The Court stated:

In arguing as to sentence, counsel—whether for the Government or for the accused—can be most effective by proposing to the sentencing authority an alternative for which there is some reasonable possibility of acceptance. In the present case, defense counsel, confronted with trial counsel's argument and aware of the serious offenses of which his client had been convicted, hardly was in a position to contend that no punitive discharge could be adjudged.

*Volmar, supra* at 342.

Additionally, the Court acknowledged that they did not know whether the appellant desired to remain in the service, but recognized "... there really was no alternative of retention in the service." *Volmar, supra* at 343. The Court concluded that trial defense counsel argued quite effectively as to sentence and noted that appellant did not indicate in any way that he disagreed with the argument of his defense counsel, either at trial or subsequent thereto. As the bottom line, COMA found no error—no ineffective assistance of counsel.

The most recent COMA decision in this area is *United States v. McNally, supra,* a

special court-martial trial. The offenses there included the wrongful possession of two ration cards, contrary to regulations, and a simple possession of a very small quantity of heroin. COMA found that the facts of the case did not compel the conclusion that a bad-conduct discharge was inevitable. Appellant had explained that his purchase of heroin was in the local community and that it was his *first* exposure to drug activity. He also explained that his possession of two ration cards was inadvertent.

The defense counsel requested the trial court in *McNally* to consider a bad-conduct discharge as "proper punishment" in spite of the fact that the record was silent as to appellant's desire for retention or discharge. COMA concluded "that counsel erred in conceding the appropriateness of a bad-conduct discharge, without any indication on the record that he was doing so pursuant to his client's wishes." *McNally, supra* at 33.

In *McNally,* Judge Cook wrote a concurring opinion in which he recognized that the trial tactics of the defense counsel may well have been proper. However, he astutely noted that appellant's conviction and sentence, and not counsel's trial tactics, were the subject of review. Judge Cook faulted the trial judge for his failure to place appellant's desire for retention or discharge on the record.

### E. Findings

We must apply the rules developed in the foregoing cases to the facts of this case. We must decide if there is an indication, on the record, that appellant desires retention; if trial defense counsel argued or implied that a punitive discharge was appropriate; and we must decide if counsel's argument on sentence proposed a fair alternative which had a reasonable possibility of acceptance.

First, we find that appellant clearly indicated his desire to be retained in spite of his conviction. Next, we find that trial defense counsel did concede that the bad-conduct discharge was inevitable. Lastly, we must decide if counsel's concession was ra-

tionally made and/or whether counsel's argument was detrimental to appellant.

This appellant stands convicted of the wrongful possession of marijuana, the wrongful introduction of marijuana into a Naval vessel for the purpose of sale, and of two separate sales of marijuana on board that ship. Additionally, he had received captain's mast for possession of a controlled substance. This captain's mast occurred after he was informed of the charges which had previously been referred for trial by special court-martial and after he had entered into a pretrial agreement which authorized the convening authority to approve a bad-conduct discharge if one were awarded by the court. We find that all in the military world would believe that the appellant should be sentenced to a bad-conduct discharge given these facts. There was no reasonable likelihood that the sentencing authority might consider unconditional retention as a viable alternative to a punitive discharge.

Appellant had agreed to stipulate that his supervisor, a first class petty officer, would testify during the sentencing hearing that appellant and the Navy could benefit if appellant had a suspended court-martial sentence hanging over him. We view this as some indication that appellant acceded to his counsel's argument on sentence.

We find that trial defense counsel clearly recognized the realities of the situation and recognized that a bad-conduct discharge was inevitable. Therefore, he argued for a sentence which had a reasonable chance of acceptance, thereby pursuing the ultimate objectives of his client, which obviously were in agreement with counsel's selection of the punishment goals to be achieved at trial.

To reach this finding we have carefully examined the appellant's unsworn statement in light of the facts previously described. Appellant stated that he knew how serious the Chief of Naval Operations was on drugs. Therefore, he had to realize the impact of nonjudicial punishment for his wrongful possession of a controlled substance which occurred between referral of

the charges to the special court-martial and the trial. Under these circumstances, the best appellant could hope to achieve was a suspension of the imminent discharge. Therefore, he stated he did not want a bad-conduct discharge but implicitly approved of counsel's request that the unavoidable discharge be accompanied with a recommendation for suspension. We find this is consistent and compatible with appellant's desire to avoid the actual receipt of a bad-conduct discharge. We have also followed the guidelines of *United States v. Palenius*, 2 M.J. 86 (CMA 1977), to determine if trial defense counsel had fully investigated the facts, marshalled the evidence most favorable to appellant and thereafter rendered competent and informed advice to his client with respect to the available options. Given the facts of this case, it is obvious that the best appellant could hope to achieve was to receive a suspension of the punitive discharge during the review or clemency processes. We choose not to second-guess counsel's strategy in seeking that result because we find adequate assistance during and after the trial.

### F. Holding

We hold that, even though appellant expressed a desire to be retained, and trial defense counsel conceded that a punitive discharge was inevitable in his argument on sentence, it was not error for the trial defense counsel to argue for a suspended bad-conduct discharge, or for a recommendation that a bad-conduct discharge be suspended. The trial judge established on the record that such recommendation was not binding on the reviewing authorities.

Trial defense counsel's objective was a reasonable objective with a possibility of acceptance. It was consistent with appellant's desires since there was no reasonable likelihood that the sentencing authority would consider retention as an alternative to the punitive discharge. The best he could hope to achieve was a conditional bad-conduct discharge.

Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Judge BYRNE concurs.

GLADIS, Senior Judge (dissenting):

I dissent because the accused was deprived of the effective assistance of counsel by virtue of his defense counsel's sentencing argument for a suspended bad-conduct discharge.

Defense counsel's argument is set forth in its entirety below:[1]

DC: Your Honor, I'll be brief. Seaman Apprentice Adams is now before you, freely and openly having admitted his guilt and the responsibility to accept the consequences for that admission. As you've heard from his own words, his only request is that you might consider suspending a BCD for the maximum time period so that he may have just one more opportunity to prove to himself as well as to others that he in fact has said "no" to drugs and that he in fact will perform up to his capabilities and his abilities as presented by the testimony of his closest supervisor. Your Honor, I believe there are three solid reasons here for you to heed this request. I think the first of them is Seaman Adams's wife. His own wife that's closest to him is very strongly against drugs, as are his parents. And they have both, in no uncertain terms, communicated that zero tolerance for drugs to him. I believe that if you were to suspend a BCD, that they would serve as a catalyst with him to aid him and to encourage him not to pursue any future involvement in drugs. Of course, Your Honor, we recognize that it is Seaman Adams himself who must make that decision. And I think, Your Honor, as you have seen

---

1. The accused's unsworn statement is set forth in its entirety in the majority opinion. Contrary to defense counsel's assertions the accused did not request a suspended bad-conduct discharge and his leading petty officer did not recommend one. The petty officer referred to a suspended sentence, but did not mention a bad-conduct discharge.

him here today, it is quite obvious that this court-martial has made indeed a lasting impression on him. I believe, as does his leading petty officer who best noticed him on board the ship, they both believe that with a suspended BCD Seaman Adams would come around and would change his ways. Your Honor, we're in a Catch 22 situation here; he can't prove that he will change until given the opportunity to do so. And, Your Honor, we do ask that. But, Your Honor, let's look at the evidence as to what he has done since—

MJ: Lieutenant [M], I don't mean to interrupt but I'm sure you understand that I'm not in a position to suspend a punitive discharge. All I can do is recommend that if I impose one.

DC: Yes, Your Honor.

MJ: All right. Fine.

DC: As far as recommending a suspended BCD, Your Honor, we feel that the evidence presented as to Seaman Apprentice Adams's cooperation with the government authorities, his free and voluntary cooperation without any promises of any consideration, his identifying several major drug dealers and suppliers on board the CAYUGA, and his solemn agreement to testify against them in court despite the consequences of that action, I think indicate his desire and his present status to change. And, Your Honor, I ask you to consider that in your recommendation, to consider recommending a suspended BCD, recognizing, of course, that he has had one chance before but, Your Honor, as we all must know, that sometimes it takes something as strong and as hard as a court-martial to make someone see the light, and I think Seaman Apprentice Adams has seen that light. Thank you.

R. 29.

Generally, the sentence must be set aside because of ineffective assistance of counsel if (1) there is some evidence in the record which fairly indicates that the accused desires to be retained in the service and (2) the defense counsel had argued that a punitive discharge was appropriate or at least had made certain remarks that could be so construed. *United States v. Volmar*, 15 M.J. 339 (CMA 1983). A request for a suspended discharge has been held to be tantamount to a concession that a punitive discharge is appropriate.' *United States v. Webb*, 5 M.J. 406 (CMA 1978). Where there is no reasonable likelihood, however, that the sentencing authority might consider retention, defense counsel may properly advocate a bad-conduct discharge as an alternative to the more severe penalty of a dishonorable discharge and lengthy confinement in a effort to cut his client's losses. *United States v. Volmar, supra.*

The narrow *Volmar* exception to the general rule—that concession of the appropriateness of a bad-conduct discharge constitutes ineffective assistance of counsel where the accused desires to be retained—is inapplicable under the circumstances of this case. *See United States v. McNally*, 16 M.J. 32 (CMA 1983). *Volmar* involved a general court-martial at which trial counsel had argued vigorously for a dishonorable discharge and 2 to 3 years confinement. The record did not indicate whether Volmar desired to remain in the service. He did not desire to serve confinement. The case now before us is a special court-martial at which the accused was willing to accept any punishment except a bad-conduct discharge. His vulnerability to confinement and forfeitures was limited by a pretrial agreement providing for suspension of confinement in excess of 45 days and forfeitures in excess of one half pay per month for 30 days. Defense counsel conceded, in effect, the appropriateness of what the accused most wished to avoid. He argued for the loss his client wanted to cut when there was no other loss to cut. The judge could not suspend the bad-conduct discharge. Risking imposition of the discharge in order to obtain a recommendation for its suspension was not effective assistance of counsel in a case in which the convening authority had not agreed in the pretrial agreement to

suspend the discharge.[2] Therefore, I dissent. I would remand the case for reassessment of the sentence eliminating the discharge or for a rehearing on sentence.

2. Some pretrial agreements provide for suspension of the discharge only if the military judge so recommends.