# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32780 (f rev)

————————————

### UNITED STATES
*Appellee*

**v.**

### Darius M. JACKSON
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 26 March 2026

————————————

*Military Judge*: Dayle P. Percle (arraignment); Lance R. Smith (trial); Tiny L. Bowman (remand).

*Sentence*: Sentence adjudged 7 December 2023 by SpCM convened at Offutt Air Force Base, Nebraska. Sentence entered by military judge on 23 January 2024: Bad-conduct discharge, confinement for 180 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Thomas R. Govan, Jr., USAF; Major Frederick J. Johnson, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa A. Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Donnell D. Wright, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, KEARLEY, and MORGAN, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Senior Judge GRUEN and Judge MORGAN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

KEARLEY, Judge:

A military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of two specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 180 days, reduction to the grade of E-1, and a reprimand.[2] The convening authority took no action on the findings or sentence.

After completing an initial review of the record of trial, this court remanded the case back to the Chief Trial Judge, Air Force Trial Judiciary, for correction of the record. Specifically, this court discovered a continuation page from Appellant's charge sheet and a transcript of Appellant's arraignment were missing from the record. *See United States v. Jackson,* No. ACM S32780, 2025 CCA LEXIS 499, at *2−3 (A.F. Ct. Crim. App. 24 Oct. 2025) (order). The record was subsequently corrected and re-docketed with this court.[3]

Appellant raises three issues on appeal: (1) whether the military judge erred by failing to inquire into Appellant's understanding of the ramifications of his agreement to a bad-conduct discharge; (2) whether 18 U.S.C. § 922 is constitutional as applied to Appellant; and (3) whether Appellant's right to speedy trial was violated.[4]

As to issue (2), we have carefully considered Appellant's allegation of error and conclude it warrants neither discussion nor relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)); *see also United States v. Johnson*, 86 M.J. 8, 14 (C.A.A.F. 2025) (holding Courts of Criminal Appeals lack "authority to modify the [18 U.S.C.] § 922 indication" in the entry of judgment). With respect to the

---

[1] Unless otherwise noted, all references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Concurrent with entering the judgment, the military judge applied pretrial confinement credit of 84 days.

[3] A military judge corrected the record by inserting charge sheets preferred on 21 February 2023 and 1 August 2023 (and referred 27 August 2023) and 1 August 2023 (and referred 1 December 2023), and the transcript along with the audio from the 12 September 2023 Article 39(a), UCMJ, 10 U.S.C. § 839(a), proceeding, as these were erroneously missing from the record.

[4] Appellant personally raised issues (2) and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

remaining issues, we find no error that materially prejudiced Appellant's rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant married SH in April 2022.[5] SH was also in the military. Shortly after their marriage, SH deployed overseas for six months, returning in October 2022. About four months after returning from her deployment, in January 2023, SH reported to Air Force Office of Special Investigations (OSI) that Appellant had physically assaulted her on multiple occasions since she had returned from her deployment.[6]

SH claimed the physical abuse she endured included being struck, strangled, whipped, gagged, having her shoulder dislocated and her teeth broken, and being forced to crawl on her hands and knees until they bled. Several of these injuries were documented by visits to the base dental clinic and an urgent care center. The dental clinic recorded that SH had two fractured teeth as well as a diffuse contusion surrounding her left eye and malar region. The urgent care center moved SH to an emergency room so they could relocate her left shoulder under conscious sedation (anesthesia).

About six weeks after suffering a dislocated shoulder, SH went to a women's hospital where she reported that she had been repeatedly physically assaulted by her husband, Appellant. She stated that two days prior to her visit, Appellant put his hands around her neck and strangled her. She also told the medical providers that he used a belt to hit her on the back.[7] Appellant was placed in pretrial confinement from 24 January 2023 to 17 April 2023. SH requested a new duty location out of fear for her safety and wellbeing. The Air

---

[5] At time of the offenses and as listed in the charge sheet, SH's initials were "SJ." She had the same last name as Appellant.

[6] The stipulation of fact entered into between the Government and Appellant, admitted as a prosecution exhibit at Appellant's trial, states that SH told law enforcement that from on or about October 2022 through on or about January 2023, Appellant "physically assaulted [SH] on multiple occasions, sometimes due to [Appellant] being angry that [SH] was unfaithful during their marriage."

[7] SH described one incident where Appellant pushed down her shoulders, forcing her to sit on the floor. He then punched her in the face and on her head repeatedly, resulting in a black eye and two chipped teeth. She also described that a month after this incident, Appellant forced her to the floor by pushing her down. She told OSI that he strangled her to the point she was unable to breathe. As she tried to run away, he again pinned her to the floor and forced her arms behind her back, applied pressure and forced her left arm into an "unnatural" position.

Force granted her request for a new duty location and SH moved via an expedited transfer. SH and Appellant were later divorced.

## II. DISCUSSION

### A. Bad-Conduct Discharge

#### 1. Additional Background

Appellant's offer for plea agreement included a term that the military judge must, upon acceptance of Appellant's guilty plea at a special court-martial, enter a sentence that included a bad-conduct discharge. The plea agreement also stated, "My counsel fully advised me of . . . the effect of the guilty plea which I am offering to make, and I fully understand their advice and the meaning, effect, and consequences of this plea."

During the plea inquiry the military judge asked, "Do you understand the contents of your plea agreement?" Appellant responded, "Yes, Your Honor." The military judge asked Appellant, "[D]o you understand that I am essentially mandated by this agreement . . . to impose a bad conduct discharge. Do you understand that?" Appellant replied, "Yes, Your Honor. I understand."

In his unsworn statement during the presentencing phase of his case, Appellant acknowledged by stating, "While this means the Air Force – my Air Force career is over, I know it is just closing one chapter and opening another." He further stated, "I know my life will be difficult with a federal conviction and a punitive discharge."

In sentencing arguments, trial counsel expressed mutual "[u]nderstanding that the accused will receive a bad conduct discharge." Trial defense counsel asserted that "[Appellant] is going to receive [a bad-conduct discharge] and there is no question about it." Trial defense counsel further argued, "This type of discharge deprives him of substantially all benefits administered by the Department of Veterans Affairs, and it tells those who [Appellant] meets that not only was he discharged from the military, but he was removed specifically for bad conduct." He further expressed, "[Appellant] is marked for life by the [bad-conduct discharge]."

#### 2. Law

This court reviews "questions of law arising from the guilty plea de novo." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). However, we review a military judge's decision to accept an accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (quoting *Inabinette*, 66 M.J. at 322). In determining whether a military judge abused his discretion in accepting a guilty plea as provident, "an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict

between the plea and the accused's statements or other evidence of record." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996).

Counsel declining to raise an objection when specifically invited by the military judge may constitute waiver. *United States v. Davis*, 79 M.J. 329, 331–32 (C.A.A.F. 2019).

When no objection is made at trial, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citations omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* at 401 (quoting *United States v. Fletcher*, 62 M.J. 175, 179 (2005)).

A bad-conduct discharge or dishonorable discharge is a severe form of punishment as our superior court has repeatedly acknowledged. *United States v. Pineda*, 54 M.J. 298, 300 (C.A.A.F. 2001) (citation omitted). Nevertheless, our superior court has recognized that "in certain circumstances a military accused may request such a punishment be imposed by his court-martial." *Id.* (citing *United States v. Volmar*, 15 M.J. 339 (C.M.A. 1983)). Trial defense counsel should not ask for a punitive discharge in contravention of an accused's wishes, and a military judge should make appropriate inquiries where an apparent conflict exists between an accused's wishes and his counsel's request. *Id.* Moreover, a trial defense counsel may not concede the appropriateness of a punitive discharge in the face of a silent record. *Id.* Under circumstances where the sentencing authority might consider retention as an alternative, it is important to ensure an accused is aware of the potential consequences of receiving a bad-conduct discharge, and trial defense counsel should not argue for such a sentence unless an accused understands the consequences and agrees with the argument. *United States v. McNally*, 16 M.J. 32, 34 (C.M.A. 1983) (Cook, J., concurring in the result) (per curiam).

No error is committed by a military judge for failing to inquire whether an accused concurs with his trial defense counsel's request that the sentencing authority impose only a bad-conduct discharge when there is no "indication of disagreement" with the argument of his defense counsel, and the record shows that a military judge would have logically assumed the suggestion of a bad-conduct discharge was in the accused's best interest. *Volmar*, 15 M.J. at 343−44; *see also United States v. Lyons*, 36 M.J. 425, 427 (C.M.A. 1993) (holding the court did not have a sua sponte duty to make further inquiry to ensure appellant understood ramifications of requesting a bad-conduct discharge where trial defense counsel argued for a bad-conduct discharge, pretrial agreement limited confinement if a punitive discharge was adjudged, and appellant did not express desire to remain in service); *United States v. Evans*, 35 M.J. 754, 758 (N.M.C.M.R. 1992) (observing "[i]n cases in which the award of a punitive discharge is virtually certain and it appears that defense counsel's

concession in argument is patently reasonable, no inquiry by the military judge is required even if the accused has not affirmatively stated his desire for a punitive discharge").

Where a record is silent on whether an appellant concurs with the argument of his counsel, the matter can be "clarified by no more than two questions by the military judge" in "determin[ing] whether the accused concurred with the argument of his counsel for a bad-conduct discharge." *McNally*, 16 M.J. at 34, 35 (Cook, J., concurring in the result) (citation omitted); *see also Evans*, 35 M.J. at 758–59 (determining this questioning need not be extensive). However, if these questions are not asked and an appellate court "[is] left with 'misgivings' from [its] perusal of the record," then it may require a reversal. *Id.* at 35 (citation omitted).

### 3. Analysis

Appellant asks this court to resolve the scope of a military judge's obligation during a plea inquiry to ascertain an accused's wishes concerning a punitive discharge and to ensure that any such position is knowingly and fully informed. Resolution of this issue begins with Rule for Courts-Martial (R.C.M.) 910, which governs the conduct of guilty plea inquiries. R.C.M. 910 requires a military judge to ensure that an accused understands the maximum authorized punishment and any applicable sentence limitations. The rule does not, however, prescribe additional or specific procedures for confirming an accused's position regarding the imposition of a punitive discharge. Therefore, we turn to relevant case law.

Precedent establishes two circumstances where heightened judicial inquiry is required. First, trial defense counsel may not request a punitive discharge in contravention of an accused's expressed wishes, and military judges should make further inquiries where apparent conflict exists. *Lyons*, 36 M.J. at 427. Second, trial defense counsel may not concede the appropriateness of a punitive discharge when the record is silent as to the accused's position. *Id.* Neither circumstance is present in this case.

There is no conflict between trial defense counsel's advocacy and Appellant's expressed agreement to receive a bad-conduct discharge. They both signed the plea agreement which included the requirement for a bad-conduct discharge. They both referred to the bad-conduct discharge in their discussions or arguments before the trial court. Additionally, the record in Appellant's case is not "silent" as to the punitive discharge. As described above, the bad-conduct discharge was expressly agreed to in the plea agreement and it was discussed on the record by all parties, to include Appellant.

Appellant contends the military judge erred in "failing to conduct a colloquy" with Appellant about whether he understood the consequences of

agreeing to a bad-conduct discharge as a term of the plea agreement. He contends he is entitled to additional relief because while the military judge asked Appellant about the provision of the plea agreement requiring a bad-conduct discharge, Appellant claims the miliary judge did not confirm "whether he underst[ood] the consequences of that bad-conduct discharge." Applying our superior court's decisions in *Pineda, McNally,* and *Volmar* to the case at hand, the military judge did not need to confirm whether Appellant understood the consequences of the bad-conduct discharge. These cases imply that a heightened level of questioning regarding the potential ramifications of receiving a bad-conduct discharge is recommended in a specific situation – when an apparent conflict exists between an accused's wishes and his counsel's request and there is a reasonable likelihood the sentencing authority may consider retention as an alternative. *See McNally,* 16 M.J. at 34 (Cook, J., concurring in the result) (explaining when there is a reasonable likelihood that a sentencing authority may consider retention as an alternative to a punitive discharge, our superior court has "considered it important to assure that an accused is aware of the potential ramifications of receiving such a discharge"); *see also Volmar*, 15 M.J. at 343 ("Our earlier cases concerned a situation where there appeared to be a reasonable likelihood that court members might consider retention in the service as an alternative to a punitive discharge.").

Here, the sentencing authority could not consider retention as an alternative due to the binding nature of the plea agreement. The military judge highlighted this to Appellant when he said, "[D]o you understand that I am *essentially mandated* by this agreement . . . to impose a bad conduct discharge. Do you understand that?" (Emphasis added). There was no "reasonable likelihood" that the military judge would consider retention since he was bound by the plea agreement.

Even though the specific circumstances of Appellant's case do not require additional questioning by the military judge, upon this court's review of the record, we find it is devoid of any evidence that Appellant did not understand the ramifications of a bad-conduct discharge. The record indicates that Appellant and his trial defense counsel were resigned to the fact that Appellant would receive a bad-conduct discharge as an agreed term of the plea agreement between Appellant and the convening authority. Appellant used terms like, "my Air Force career is over" and "my life will be difficult with . . . a punitive discharge," implying he understood that a bad-conduct discharge would have difficult, long-lasting consequences. Appellant's trial defense counsel acknowledged how a bad-conduct discharge would "deprive [Appellant] of substantially all benefits administered by the [VA]," and Appellant would be "marked for life" by the bad-conduct discharge. Appellant asks us to consider that these comments were made after the guilty plea was accepted, and therefore, do not demonstrate understanding of the consequences before pleading guilty.

However, these comments were made shortly after the military judge accepted Appellant's guilty plea and before sentence was announced. Appellant's plea agreement specifically states that he may withdraw his plea of guilty any time *before sentence is announced*, which Appellant did not do. Given that the plea agreement was already discussed in detail, to include the provision requiring a bad-conduct discharge, these statements provide further proof that Appellant knew and understood the consequences of his plea.

Absent any statutory or precedential basis to do so, we decline to expand the scope of a military judge's duty to advise an accused or to ensure that Appellant's agreement to, or request for, a punitive discharge include a separate colloquy of all the collateral consequences of an agreed upon punitive discharge. Furthermore, collateral consequences of a punitive discharge can vary with statutory and regulatory developments and specific situations unique to the military member. Imposing a requirement that a military judge discuss and explain potential effects, in a case where concurrence is clear and retention unlikely, places a substantial and impractical burden on the trial court beyond what is required to ensure an Appellant's plea is provident. We conclude that the military judge acted well within his discretion in accepting the plea and committed no error in conducting the plea inquiry, much less plain error.

## B. Speedy Trial

Appellant claims his right to a speedy trial was violated. He specifically claims that he was arraigned 128 days after charges were preferred, which is outside the 120-day requirement imposed by R.C.M. 707. The Government claims that Appellant was arraigned 43 days after preferral of charges, and as such the Government met the 120-day requirement imposed by R.C.M. 707. We concur with the Government and find no error.

### 1. Additional Background

On 21 February 2023, Appellant's commander preferred three charges against him. A preliminary hearing, pursuant to Article 32, UCMJ, 10 U.S.C. § 832, was held on 2 March 2023.[8] Those charges were not referred to court-martial. Instead, on 1 August 2023, a new set of charges were preferred against Appellant, and referred to a general court-martial on 27 August 2023.

On 12 September 2023, an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was conducted where Appellant was arraigned at a general court-martial for

---

[8] The charges before the PHO were as follows: one specification of conspiracy to commit an offense under the UCMJ, to wit: assault consummated by a battery, in violation of Article 81, UCMJ, 10 U.S.C. § 881; one specification of aggravated assault in violation of Article 128, UCMJ, 10 U.S.C. § 928; and nine specifications of domestic violence in violation of Article 128b, UCMJ. *See Jackson*, 2025 CCA LEXIS 499, at *1–2, n.3.

this new set of charges.[9] At this arraignment, the military judge pointed out that the Article 32, UCMJ, preliminary hearing predated the preferral and referral of charges and asked for Appellant's position on that issue. Appellant's trial defense counsel stated that Appellant did not have an issue with the charges on the current charge sheet being previously investigated at the Article 32, UCMJ, hearing in March 2023, and to the extent any new charges were not previously investigated at that Article 32 hearing, his client would affirmatively waive an additional Article 32, UCMJ, hearing.

On 3 October 2023, the military judge signed an entry of judgment relating to the charges preferred on 21 February 2023, indicating no pleas were entered and all charges and specifications were "withdrawn and dismissed without prejudice." The judgment reads: "This judgment reflects the result of the court-martial, as modified by any post-trial actions, rulings, or orders, if any, and is hereby entered into the record on 3 October 2023."

On 28 November 2023, Appellant and the convening authority entered into a plea agreement, where Appellant stated he was "the accused facing a [g]eneral [c]ourt-[m]artial referred on 27 August 2023." The plea agreement included, *inter alia*, that Appellant would plead guilty to two specifications of domestic violence in violation of Article 128b, UCMJ; that he would plead at a special court-martial, to include entering into a reasonable stipulation of fact; and that the remaining offenses would be withdrawn and dismissed, some with prejudice, some without prejudice, upon acceptance of Appellant's guilty pleas. Further, in exchange for his plea of guilty, Appellant agreed that the military judge must, upon acceptance of his guilty plea, enter a sentence that included no less than 90 days total confinement and no more than 180 days confinement, to run consecutively, and a bad-conduct discharge.[10] Additionally, the plea agreement included a "waive all waivable motions" provision.

On 28 November 2023, the general court-martial convening authority withdrew the 27 August 2023 referred charges. On 1 December 2023, the special

---

[9] The charges before the military judge at the 12 September 2023 arraignment were as follows: one specification of conspiracy to commit an offense under the UCMJ, to wit: assault consummated by a battery, in violation of Article 81, UCMJ; one specification of negligent dereliction of duty, in violation of Article 92, UCMJ, 10 U.S.C. § 892; one specification of aggravated assault in violation of Article 128, UCMJ; and seven specifications of domestic violence in violation of Article 128b, UCMJ.

[10] The terms of the agreement also included that the military judge would credit Appellant with no less than 84 days of confinement time served and for good time served.

court-martial convening authority re-referred the charges to a special court-martial.[11]

At the beginning of the 7 December 2023 special court-martial proceeding, the military judge referenced the 12 September 2023 arraignment by stating, "I understand there was also a different military judge who arraigned you earlier. Is that correct?" Appellant replied, "Yes, Your Honor." At this 7 December 2023 proceeding and pursuant to the plea agreement, Appellant plead guilty to two specifications of domestic violence in violation of Article 128b, UCMJ (Specifications 1 and 2 of Charge IV). As per the plea agreement, once the military judge found Appellant guilty of Specifications 1 and 2 of Charge IV, the Government agreed to withdraw and dismiss without prejudice the Specification to Charge I, and the Specification to Charge II. It further agreed to withdraw and dismiss with prejudice the Specification to Charge III, and Specifications 3, 4, 5, 6, and 7 of Charge IV. The Government then complied with the plea agreement by lining out these remaining charges and specifications on the charge sheet.

### 2. Law

"The accused shall be brought to trial within 120 days after . . . preferral of charges . . . ." R.C.M. 707(a). An accused is "brought to trial within the meaning of this rule at the time of arraignment under R.C.M. 904." R.C.M. 707(b)(1). The purpose of the 120-day time limit in the rule is to protect an appellant's right to a speedy trial under the Sixth Amendment of the United States Constitution[12] and Article 10, UCMJ, and society's interests in the prompt administration of justice. *United States v. Proctor*, 58 M.J. 792, 795 (A.F. Ct. Crim. App. 2003).

In general, we review alleged R.C.M. 707 violations de novo. *United States v. Heppermann*, 82 M.J. 794, 803 (A.F. Ct. Crim. App. 2022).

Arraignment will toll the speedy trial clock. *United States v. Doty*, 51 M.J. 464 (C.A.A.F. 1999). However, the applicable version of R.C.M. 707(e) provides: "Except as provided in R.C.M. 910(a)(2) [pertaining to conditional guilty pleas], a plea of guilty which results in a finding of guilty forfeits any speedy trial issue as to that offense, unless affirmatively waived." We review forfeited issues for plain error. *Davis*, 79 M.J. at 331. Under the plain error standard of review, the "[a]ppellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a

---

[11] This court-martial was convened by Special Order AB-1, Headquarters 55th Wing, Air Combat Command, Offutt Air Force Base, Nebraska, dated 1 December 2023. This order was amended by Special Order AB-2, dated 6 December 2023.

[12] U.S. CONST. amend. VI.

substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted).

### 3. Analysis

Appellant claims his right to a speedy trial was violated. Appellant argues that charges were preferred against him on 1 August 2023, and he was not arraigned until 7 December 2023. Since this was 128 days after preferral, Appellant claims he was not brought to trial within 120 days of preferral of charges, as required under R.C.M. 707(a)(1). As a result, Appellant asks this court to dismiss the affected charges with prejudice. The Government claims that while charges were preferred against Appellant on 1 August 2023, his arraignment took place at the earlier general court-martial proceeding on 12 September 2023. The Government argues that since 43 days elapsed between preferral (1 August 2023) and arraignment on the charges (12 September 2023), he was brought to trial within 120 days and no speedy trial violation occurred.

Appellant's proposed timeline discounts the 12 September 2023 arraignment before a military judge sitting as a general court-martial. We do not know if Appellant takes this position because prior to this court's remand order the 12 September 2023 arraignment was not in the record of trial, or if he believes this arraignment was no longer in effect when Appellant later appeared before a military judge sitting as a special court-martial. Therefore, his assignment of error required us to examine whether the prior general court-martial arraignment satisfied the requirements of a later special court-martial proceeding. While Appellant's forum changed from a general court-martial to a special court-martial pursuant to a plea agreement, the charges and specifications from the 1 August 2023 preferral were the same when re-referred to a special court-martial. Appellant plead guilty to two specifications on 7 December 2023, and the remaining charges withdrawn and dismissed after the military judge accepted Appellant's guilty plea.

Under R.C.M. 707, an accused must be "brought to trial" within 120 days of the preferral of charges. An accused is "brought to trial within the meaning of this rule at the time of arraignment under R.C.M. 904." R.C.M. 707(b)(1). Based on the language of R.C.M. 707, the arraignment is connected to the preferral of charges, not a specific special order or court forum, and Appellant's charges, as preferred, did not change prior to the 7 December 2023 trial date. Absent statutory or precedential guidance to the contrary, we are persuaded that the 12 September 2023 arraignment at Appellant's general court-martial satisfied the arraignment requirements of the later special court-martial. As such, Appellant was arraigned on 12 September 2023, 43 days after charges were preferred, therefore, there is no issue of speedy trial as Appellant was brought to trial well within the 120-day standard.

### III. CONCLUSION

The findings as entered are correct in law. Article 66(d), UCMJ, 10 U.S.C. 10 U.S.C. §§ 866(d) (*Manual for Courts-Martial, United States* (2024 ed.)). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court