UNITED STATES, Appellee

v

BERNARD K. HOLCOMB, Private, U. S. Army, Appellant

20 USCMA 309, 43 CMR 149

No. 23,218

January 29, 1971

*Captain Paul C. Saunders* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Colonel George J. McCartin, Jr.,* and *Captain Monte Engler.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Captain Benjamin G. Porter,* and *Captain James S. Mathews.*

## Opinion of the Court

DARDEN, Judge:

In this case the object of the Court's concern is with the closing sentence argument of defense counsel and with whether this argument conceded too much by its statement that the accused "doesn't deserve another chance."

A general court-martial found the appellant guilty of making and uttering eight worthless checks, two specifications of absence without leave, wrongfully wearing sergeant E–5 stripes, and eleven specifications of forgery. A sentence of dishonorable discharge, total forfeitures, and confinement at hard

**309**

labor for two years is unchanged after earlier appellate review.

After the appellant was convicted, he testified in his own behalf in extenuation and mitigation during the presentence hearing. The appellant testified that (1) he was seventeen years old when he came in the service, (2) he completed the general educational development course in the Army, (3) he liked the Army, (4) he wanted to stay in the Army, (5) if permitted to stay in the Army he would attempt to make restitution for his misdeeds, (6) he thought he could "straighten out . . . [his] life" if permitted to stay, and (7) he promised to do his best to serve well the rest of his service if permitted to stay in the Army.

The trial defense counsel then argued:

"Gentlemen, I will preface all my remarks by stating, as we all know, the United States Army is not a rehabilitory agency. We are not here to pick up people out of the streets and make good people out of them. If we can do this incident to our main function, however, I think it is a worthwhile and worthy thing to do.

"Here today we have a nineteen-year-old E–2, who has had one prior summary court-martial. He has been in the service over two years. He comes from a family background which has been poor, at best. This has not been a hindrance to other people from a similar background. However, we aren't making a determination as to how other people reacted under the circumstances.

"The defense would like you to consider that this individual was sent over to Korea at the age of eighteen years old. To be entirely blunt, I think Korea was too much for him. This is no excuse for the offenses which he committed. They were stupid. He admits they were stupid. He did have enough interest in his background problems to seek our chaplain's aid prior to any type of court-martial proceedings against him. As you remember from the deposition, Chaplain Baker talked to him in August 1968, prior to his first summary court-martial. He did not heed the advice of Chaplain Baker.

"The prosecution has made much of the fact that the individual is facing sixty years and six months. There is no question that he is facing sixty years and six months. However, we are not dealing here with a crime which shocks the conscience. Again, there is no excuse for this crime, absolutely none.

"The fact that the individual pleaded guilty should be considered, saving all of us a lot of time, money and aggravation. However, more important, he pleaded guilty because he was guilty and because he was ready to take his punishment. The individual wants to stay in the Army.

"This is definitely a grave decision for you all to make. He doesn't deserve another chance. We are not a rehabilitory agency, but Private Holcomb requests another chance, so that he can show you as well as the Army that they did not make a mistake. Thank you, sir."

According to appellate defense counsel, the trial defense counsel's statement that "He doesn't deserve another chance" indicates an abandonment of his client and a concession that a punitive discharge would be appropriate.

Unless the record leaves no doubt that an accused desires to be discharged punitively, the ▆▆▆▆ ▆ trial defense counsel may not concede to the court the appropriateness of such a discharge. United States v Mitchell, 16 USCMA 302, 36 CMR 458 (1966); United States v Mella, 17 USCMA 122, 37 CMR 386 (1967); United States v Richardson, 18 USCMA 52, 39 CMR 52 (1968); United States v Schwartz, 19 USCMA 431, 42 CMR 33 (1970); cf. United States v Weatherford, 19

USCMA 424, 42 CMR 26 (1970). Even if an accused desires a punitive discharge, we believe his defense counsel has an obligation to caution him of the serious and lasting consequences, and to try to dissuade him from this course of action.

In the case before us, trial defense counsel did not expressly concede the appropirateness of a punitive discharge. Such a concession can be inferred from his statement that the accused did not deserve another chance. Other inferences are equally plausible; the statement now assailed could have been made as a tactic to aid his client by acknowledging an impression he imputed to intelligent court members. Trial defense counsel in a court-martial addresses court members who may be less susceptible to emotional appeals than are average jurors in civil courts. This, of course, is not necessarily to argue that military courts-martial decisions are more just or more lenient than those of civil juries, but a trial defense counsel is not wrong in displaying candor and in crediting court members with intelligence.

The Government's response to the issue emphasizes that although the appellant had entered into a pretrial agreement for a maximum sentence including a dishonorable discharge and confinement at hard labor for three years, the court-awarded sentence was a dishonorable discharge and two years' confinement at hard labor. We are reminded that defense counsel did not say the appellant desires a discharge or urge the court to give him one or to declare that one was appropriate. To support the appellant's eagerness to show the Army that if he had another chance "they did not make a mistake," the trial defense counsel relied on (a) the young age of the appellant, (b) his poor family background, (c) the thought that the combination of youth and Korea was "too much for him," (d) appellant's having sought assistance from the chaplain after having recognized his mistakes and before disciplinary action against him, (e) the suggestion that the offenses do not "shock the conscience," although the maximum penalty for them was confinement for more than sixty years, and (f) the mitigating effect of a guilty plea.

With some misgivings, we nonetheless conclude that the appellant should have a rehearing on his sentence. The misgivings result from our awareness that from only a bare reading of the statement, even in context, without hearing the inflection, and without observing the manner in which the words were uttered, we may attribute an impact that did not occur. We would like to avoid any tendency to be so paternalistic toward counsel's tactics that they are limited to an unimaginative approach in which only commonplaces and threadbare arguments are acceptable. Our inclination with counsel is to give them their head. The statement in question would have been unexceptionable if there had been almost any qualification to avoid a possible misunderstanding that appellant's own counsel thought the appellant was undeserving of another chance.

The decision of the United States Army Court of Military Review is reversed as to the sentence. The record of trial is returned to the Judge Advocate General of the Army for a rehearing on the sentence.

Chief Judge QUINN and Judge FERGUSON concur.