**UNITED STATES, Appellee,**

v.

**Raymond M. VOLMAR, Airman Basic,
U.S. Air Force, Appellant.**

No. 40,506.
ACM 22717.

U. S. Court of Military Appeals.

May 9, 1983.

For Appellant: *Captain John V. Sullivan* (argued); *Colonel George R. Stevens* and *Captain Douglas H. Kohrt* (on brief).

For Appellee: *Major George D. Cato* (argued); *Colonel James P. Porter* (on brief); *Lieutenant Colonel Jennings B. Meredith,* USAFR.

*Opinion of the Court*

EVERETT, Chief Judge:

On December 17–19, 1979, Airman Volmar was tried by a general court-martial at Mountain Home Air Force Base, Idaho, and was found guilty of wrongfully using marihuana, transferring cocaine, and obstructing justice by threatening to do bodily harm to a witness if the witness did not refuse to testify against him or give false testimony at his upcoming Article 32 investigation hearing.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year and 6 months, and forfeiture of $350.00 pay per month for 18 months. However, upon the advice of his staff judge advocate, the convening authority disapproved the finding of guilty of obstructing justice and approved a finding of guilty of the lesser included offense of communication of a threat to the Article 32 witness. He then reduced the forfeitures by $51.00 per month but otherwise approved the sentence.

After the Air Force Court of Military Review affirmed the findings and sentence as modified by the convening authority, we granted review of this single issue[2]:

> WHETHER THE DEFENSE COUNSEL'S SENTENCING ARGUMENT IN WHICH HE CONCEDED THE APPROPRIATENESS OF A BAD–CONDUCT DISCHARGE AS AN ALTERNATIVE TO A DISHONORABLE DISCHARGE CONSTITUTED A DEPRIVATION OF THE APPELLANT'S RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL.

1. These offenses were violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.

2. We specified for review an issue which we subsequently decided adversely to the accused in *United States v. Ettleson,* 13 M.J. 348 (C.M.A.1982).

I

The granted issue is like those with which the Court has dealt on several prior occasions. Perhaps the leading case is *United States v. Mitchell,* 16 U.S.C.M.A. 302, 36 C.M.R. 458 (1966), where the accused's sentence was set aside because, during his sentencing argument, defense counsel had told the court members that "he 'would be testing . . . [their] endurance' to ask [them] that . . . [his client] not be separated from the service." Furthermore, he remarked to them that "the accused 'had not been sufficiently impressed with his military responsibility' to resist recidivism." *Id.* at 303, 36 C.M.R. at 459. Under the circumstances, we found this "positive declaration that a punitive discharge is appropriate," *id.* at 304, 36 C.M.R. at 460, was in conflict with "the accused['s] 'frequently' expressed . . . desire to" remain in the service, which had been brought out during the presentencing hearing. *Id.* at 303, 36 C.M.R. at 459. As *Mitchell* explains:

Defense counsel is an advocate for the accused, not an *amicus* to the court. *Ellis v. United States,* 356 US 674, 2 L ed 2d 1060, 78 S Ct 974 (1958). This does not mean, of course, that he should knowingly present false evidence or that he should willfully distort the meaning of matters in evidence. However, he is obliged to marshal the evidence in the way most favorable to the accused. When the accused has entered a plea of not guilty, defense counsel should not concede away his innocence. *United States v. Walker,* 3 USCMA 355, 359, 12 CMR 111; *United States v. Smith,* 8 USCMA 582, 585, 25 CMR 86, footnote 2. No less can defense counsel argue for a severe punishment, when the accused himself pleads for mercy. How shocking it would be, for example, for defense counsel to say the accused deserves the death penalty, when the accused has begged for his life. There may be cases in which the offense is "so heinous or so repugnant to common decency" that all in the military would, at first thought, at least, believe the accused should be sentenced to a punitive discharge. *United States v. Fort,* 16 USCMA 86, 89, 36 CMR 242. In such cases, it might perhaps be an allowable defense tactic to plead affirmatively only for leniency as to the period of confinement and accessory penalties. There is, however, a vast difference between a passive acceptance of the force of adverse facts and a positive declaration that a punitive discharge is appropriate, especially when the accused has personally pleaded that he be retained in the service. The law officer should have stopped defense counsel as soon as the implications of his argument became apparent and, out of the presence of the court members, should have cautioned him as to their effect. *United States v. Lewis,* 16 USCMA 145, 36 CMR 301.

*Id.* at 303–04, 36 C.M.R. at 459–60.

Later, in *United States v. Richardson,* 18 U.S.C.M.A. 52, 53, 39 C.M.R. 52, 53 (1968), we concluded that the defense counsel had prejudiced the accused as to sentence because "several circumstances tend to indicate that the accused did not want to be separated from the service with that type of discharge," but the defense counsel had told the court members "that 'probably the army would be better off without' . . . [accused] and that an 'appropriate and just sentence' could include a bad-conduct discharge."

Then, in *United States v. Garcia,* 18 U.S.C.M.A. 75, 76, 77, 39 C.M.R. 75, 76, 77 (1968), we overturned the accused's sentence because his defense counsel had argued "that the accused's conduct 'in the last year does warrant a BCD,'" but there was "ample evidence to indicate that the accused did, in fact, desire to remain in the . . . [service] to complete his term of enlistment."

Even though in *United States v. Holcomb,* 20 U.S.C.M.A. 309, 43 C.M.R. 149 (1971), the defense counsel did not expressly acknowledge the appropriateness of a punitive discharge, this could have been inferred from his "statement that the accused 'doesn't deserve another chance.'" Therefore, the Court vacated the accused's sen-

tence, for he had testified during the pre-sentencing hearing that he wanted to stay in the Army. See also *United States v. Cook,* 18 U.S.C.M.A. 159, 39 C.M.R. 159 (1969).

Finally, in *United States v. Webb,* 5 M.J. 406 (C.M.A.1978), the defense counsel had argued for a suspended discharge, which, of course, a military judge has no power to adjudge; and so, under the circumstances, we determined the defense counsel's request for a suspended discharge was tantamount to conceding that a punitive discharge was appropriate. Consequently, we set aside Webb's sentence, since the record evinced "an explicit desire on . . . [his] part to be retained in the service." Indeed, he had expressly informed the military judge that—"whatever the sentence" might be, "I just hope that I can get back in the Army and prove myself." *Id.* at 407.

In summary, then, these cases hold that a sentence must be set aside if (1) there is some evidence in the record which fairly indicates that the accused desires to be retained in the service despite his conviction, and (2), the defense counsel had argued that a punitive discharge was appropriate punishment for the accused, or at least had made certain remarks that could be so construed. Under such circumstances, we have repeatedly ruled that there is ineffective assistance of counsel, and we in no way question here the correctness of those earlier rulings.

## II

In the case at bar, appellant complains about these remarks which his defense counsel made to the court members during his closing argument on the sentence:

> Let's talk about discharge. You have two options as far as discharge is concerned at this time. Two and only two, if discharge, in your mind, is appropriate. It is hard to stand here and argue that it is not, right? *It is hard for a captain in the United States Air Force to stand before senior officers in the Air Force concerning a man with four Article 15s and two Letters of Repri-*

> *mand, conviction in a general court, kind of hard to say, "hey we ought to keep this man, he's going to do us a big favor." No, gentlemen, I'm not going to stand before you and say that.* What I would like to talk to you briefly about is dishonorable discharge or bad conduct. Dishonorable discharge from the United States Air Force, DD. Permanent binding effects for all practical purposes. Do away with veteran's benefits, any benefits that might accrue to any other members of our military society. And, you may say that's appropriate, based on his conduct that is appropriate. I will not argue that point. But a bad conduct discharge as a practical matter has the same effect. There are some things, possibilities with a bad conduct discharge that are foreclosed with a dishonorable discharge. Your determination today is, do we label this man with a dishonorable discharge for life, for life. Do we consider a bad conduct discharge where although the possibilities are slim, slim—and I'm telling you from my understanding—that as a practical matter they are almost identical. *But with a BCD—bad conduct discharge— there are possibilities of having it changed, something done, something restored, if the individual makes progress.* If not, as a practical matter, he's out. He's out, benefits as a practical matter, they're cut off. I guess what I'm asking, do we close all doors, cut off everything, take an individual wad him up, out of the military and society and send him away? Or, do we leave some door open with a potential for rehabilitation, something to strive for. I submit that is what we do.

> . . . .

> DC: *One year, BCD, forfeitures of two-thirds pay. I request that you consider that during your deliberations.*

(Emphasis added).

This portion of defense counsel's argument must not, however, be viewed in the

abstract. It followed a vigorous and passionate argument by trial counsel, who had emphasized that spreading drugs "rips and tears at the guts and heart of the military" and who had asked the court members "to consider the protection of society from individuals who will break the law willingly." Trial counsel also had adverted to Volmar's conviction of obstructing justice and had termed this "the most appalling and aggregant [sic] of all the offenses." He contended:

> That offense alone should be—or is—of a dishonorable nature deserving of a dishonorable discharge. Combine the drug offenses with this obstruction of justice offense and there is no doubt that this man's conduct has been dishonorable and so his discharge should likewise be depicted.
>
> Gentlemen, the government feels that a dishonorable discharge is fully warranted and merited in this case. The flaunting of military society by the use and transfer of drugs combined with the obstruction of justice—the administration—the obstruction of the administration of justice is well deserving of a dishonorable discharge.

Then, after calling the attention of the court members to appellant's poor military record, trial counsel argued that confinement at hard labor would be a most appropriate punishment and that the Government's position was that it should be adjudged in years, rather than months. Subsequently, he stated: "Gentlemen, the government feels that two to three years is easily warranted for this type of actions [sic]."

Thereafter, trial counsel turned his attention to the appropriate financial sanctions and strenuously contended that "these offenses with their definite flouting and flaunting of the military authority, warrants [sic] a total forfeiture." In conclusion, he suggested:

> That the conduct of Airman Volmar has been nothing short of dishonorable and

such punitive discharge should be given so that it truly depicts what he has done. And lastly, confinement at hard labor, jail time is deserving and is truly warranted. And that such confinement at hard labor should be of substantial amount of time—at the very minimum, two to three years.

Defense counsel responded by arguing first that, according to stipulated testimony, cocaine was not nearly so damaging as heroin, with which it had been compared at one point earlier in the trial.[3] He suggested that the Air Force itself had some responsibility for Volmar's past military record. Then, he noted that appellant had been in pretrial confinement for 3 months and that 2 or 3 years' confinement, as urged by the Government, was not appropriate, and that, instead, 8 to 9 months might be more suitable. At this point, defense counsel turned to the subject of a punitive discharge and uttered the remarks which now are being questioned on appeal.

We do not agree, however, that defense counsel made any improper concession or that the military judge erred in failing to halt the argument and convene an Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), session to determine whether appellant concurred in the concession made by his counsel. In arguing as to sentence, counsel—whether for the Government or for the accused—can be most effective by proposing to the sentencing authority an alternative for which there is some reasonable possibility of acceptance. In the present case, defense counsel, confronted with trial counsel's argument and aware of the serious offenses of which his client had been convicted, hardly was in a position to contend that no punitive discharge could be adjudged. While he did make token obeisance to the possibility that the court members might conclude a discharge was not appropriate, defense counsel properly recognized that the real issue before the members was the type of discharge that his client would receive. Understandably, he

---

**3.** The stipulated testimony was that of Dr. Andrew M. Weil, M.D., and conformed to the expected testimony of the same witness in *United States v. Ettleson, supra.*

decided to suggest that they consider a bad-conduct discharge, rather than a dishonorable discharge.

Unlike a bad-conduct discharge adjudged by a special court-martial,[4] such a discharge, when adjudged by a general court-martial, is virtually indistinguishable in many of its effects from a dishonorable discharge. Indeed, the judge so advised the court members in his instructions on sentence. However, in terms of stigma, a dishonorable discharge undeniably is more adverse to an accused than a bad-conduct discharge and always has been so treated by our Court. Therefore, an effort to mitigate an impending sentence from a dishonorable discharge to a bad-conduct discharge would clearly benefit any accused.

The tactics of defense counsel as to the discharge paralleled his approach to confinement. While we do not know whether Volmar desired to remain in the service [5], we can safely assume that he did not wish to serve a single day of confinement. If we accept the argument which has been made by appellate defense counsel, presumably we also should conclude that trial defense counsel never should have conceded that *any* confinement was appropriate—rather than suggesting that the court members think in terms of 8 or 9 months, which, together with the pretrial confinement, would total a year of confinement.

Our earlier cases concerned a situation where there appeared to be a reasonable likelihood that court members might consider retention in the service as an alternative to a punitive discharge. This situation often exists in trials by special courts-martial, which involve less serious offenses.

Under such circumstances we have considered it important to assure that an accused is aware of the potential ramifications of receiving a bad-conduct discharge and that his counsel does not argue for such a sentence unless the accused understands the consequences and is in accord therewith.[6]

Here, as perceived by defense counsel, there really was no alternative of retention in the service.[7] Indeed, in light of the confinement imposed in the present case, we can hardly imagine that these court members would not have included in the sentence a discharge of some sort. From our review of the record and our comparison of the crimes involved with the sentence adjudged, we can only conclude that trial defense counsel argued quite effectively as to the sentence. Certainly, appellant, who was present in court, did not give any indication of disagreement with the argument of his defense counsel; and nothing filed subsequent to the trial would indicate that appellant disavows the tactics of his advocate.

Of course, since defense counsel was performing his duties in a way which the trial judge would logically have assumed was in appellant's best interests, the judge had no obligation to stop the trial in order to interrogate appellant and his counsel as to whether the argument had been authorized by the client. To do so would have interrupted the flow of the argument and probably would have lessened its impact on the members and its value to appellant. Moreover, asking appellant to decide whether defense counsel had made the very best tactical choice in arguing on an appropriate

---

4. For example, the bad-conduct discharge from a special court can be reviewed by a discharge review board under 10 U.S.C. § 1553. Also, its effect on veterans' benefits is usually a matter for adjudication by the Veterans Administration.

5. We note that at an earlier time appellant had unsuccessfully sought to obtain a "hardship discharge."

6. In accordance with our caselaw, paragraph 4–32 of AFM 111–1 prescribes a procedure to be followed when the accused "intends to ask

... for a punitive discharge"; but that procedure is inapplicable here, since neither the accused nor his counsel was asking for a discharge. Instead, the defense sought to avoid a more onerous discharge.

7. We are aware that a court-martial can impose a light sentence for a heinous crime or can adjudge lengthy confinement but no discharge. However, defense tactics do not have to contemplate every aberration and can rely on high probabilities.

sentence would seem to be a fruitless exercise. Indeed, in such an inquiry, how far would the defense counsel have to go in spreading on the record his analysis of the probable reactions of court members to various possible arguments?

From our examination of this record, we conclude that defense counsel did not fall in his duties as an advocate by suggesting that—instead of adjudging a dishonorable discharge, as urged forcefully by the prosecutor—they impose only a bad-conduct discharge. Moreover, in this case, the military judge had no occasion to inquire whether appellant had authorized his counsel to make such an argument.

## III

Since no error was committed by defense counsel or by the military judge, the decision of the United States Air Force Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.