UNITED STATES, Appellee,

v.

Billy LEE, Jr., Senior Airman,
U.S. Air Force, Appellant.

No. 98–0952.
Crim.App. No. 32794.

U.S. Court of Appeals for
the Armed Forces.

Argued April 8, 1999.

Decided Sept. 28, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, J., joined. CRAWFORD, J., filed an opinion

concurring in the result. EFFRON, J., filed a dissenting opinion.

For Appellant: *Captain Stephen P. Kelly* (argued); *Colonel Douglas H. Kohrt* (on brief); *Colonel Theodore J. Fink.*

For Appellee: *Major Eric D. Placke,* USAFR (argued); *Lieutenant Colonel Anthony P. Dattilo* and *Major Ronald A. Rodgers* (on brief).

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of attempted distribution of cocaine, conspiracy to commit larceny, dereliction of duty, wrongful distribution of cocaine, and larceny, in violation of Articles 80, 81, 92, 112a, and 121, Uniform Code of Military Justice, 10 USC §§ 880, 881, 892, 912a, and 921, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 10 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT WHEN HIS DEFENSE COUNSEL ESSENTIALLY CONCEDED DURING CLEMENCY THAT HIS CLIENT SHOULD RECEIVE A BAD–CONDUCT DISCHARGE.

For the reasons set out below, we affirm.

Appellant pleaded guilty in accordance with a pretrial agreement in which the convening authority agreed to disapprove any confinement in excess of 16 months, but could approve any punitive discharge that was adjudged. In a stipulation of fact, appellant admitted destroying his motorcycle in order to defraud his insurance company, conspiracy with another airman to defraud an insurance company by hiding the other airman's motorcycle, attempting to obtain cocaine in order to sell it, selling cocaine, and failing to register several weapons.

In a post-trial request for clemency, appellant, his father (a retired U.S. Army Sergeant Major), his wife, his mother, and his sister all asked the convening authority to disapprove the dishonorable discharge and approve a general discharge. As part of the same clemency package, appellant's defense counsel asked that the convening authority commute the dishonorable discharge to a bad-conduct discharge.

Appellant now argues that his defense counsel provided ineffective post-trial representation by conceding that a bad-conduct discharge was appropriate, thereby undercutting his request for clemency. Appellant has not asserted, before this Court or the court below, that his defense counsel failed to discuss the clemency submission with him, or that defense counsel's request for a bad-conduct discharge was contrary to his wishes.

Counsel are presumed to be competent. To overcome this presumption, an appellant must show that his counsel was deficient, and that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Morgan,* 37 MJ 407, 409 (CMA 1993). The right to effective representation extends to post-trial proceedings. *United States v. Cornett,* 47 MJ 128, 133 (1997). Defense counsel is responsible for post-trial tactical decisions, but he should act "after consultation with the client where feasible and appropriate." *United States v. MacCulloch,* 40 MJ 236, 239 (CMA 1994). Defense counsel may not submit matters over the client's objection. *United States v. Hood,* 47 MJ 95, 97 (1997). We review issues of ineffective representation de novo. *United States v. Wiley,* 47 MJ 158, 159 (1997).

Appellant specifically stated at trial that he did not want to suffer the humiliation of a punitive discharge. However, there is no assertion and no evidence that defense counsel did not consult with appellant before submitting the clemency package. Furthermore, there is no evidence that, once appellant was confronted with the possibility that the convening authority would approve the adjudged dishonorable discharge, he told his defense counsel that he objected to asking

the convening authority to reduce the dishonorable discharge to a bad-conduct discharge.

■ In any event, we need not decide if defense counsel was deficient by not resolving the inconsistency in appellant's clemency submission, because the second *Strickland* prong is not met. To prevail, "appellant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Wiley, supra.*

■ Errors in post-trial representation can be tested for prejudice. *United States v. Cornett, supra.* However, because of the highly discretionary nature of the convening authority's clemency power, the threshold for showing prejudice is low. This Court will give an appellant the benefit of the doubt and find that "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *United States v. Wheelus,* 49 MJ 283, 289 (1998), quoting *United States v. Chatman,* 46 MJ 321, 323–24 (1997).

■ Unlike our recent decisions in *United States v. Johnston,* 51 MJ 227 (1999), and *United States v. Lee,* 50 MJ 296 (1999), we need not speculate about what the convening authority might have done if defense counsel had supported the request to disapprove the dishonorable discharge and substitute a general discharge. The record demonstrates that the convening authority would not have disapproved the dishonorable discharge, because he was unwilling to take the lesser step of commuting it to a bad-conduct discharge.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

CRAWFORD, Judge (concurring in the result):

While the majority prefers to rely on the second prong of the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test, I believe that defense counsel's request for a bad-conduct discharge supports the proposition that counsel was not deficient.

The key to effective advocacy on behalf of one's client is one's own credibility as counsel. This requires the advocate to do many things and balance many decisions, including making rational choices based on the unique circumstances of each case and the probabilities of what the decision maker might do. Counsel then structures arguments around those probabilities. We have recognized that a military defendant is entitled to the effective assistance of counsel at the pretrial, trial, and post-trial stages, and that this includes submitting post-trial matters to the convening authority, as in this case. But here, counsel decided, based on the probabilities, that the best he could hope for was a commutation of the dishonorable discharge to a bad-conduct discharge. Such a decision does not amount to ineffectiveness of counsel. Any implications by the majority to the contrary are factually wrong and disregard our precedent.

As the majority recognizes, the record is not silent as to the desires of appellant. *See United States v. Holcomb,* 20 USCMA 309, 310, 43 CMR 149, 150 (1971). Here, as in *United States v. Lyons,* 36 MJ 425, 427 (CMA 1993), "[t]he record clearly demonstrates that appellant desired to return to his family as soon as possible and that he hoped to minimize his ... [discharge] by asking for a bad conduct-discharge...." Under such circumstances, we held in *Lyons* "that the military judge did not err by declining to conduct an inquiry on the record regarding appellant's request for punitive discharge." *Id.*

Or, as we stated in *United States v. Mitchell,* 16 USCMA 302, 304, 36 CMR 458, 460 (1966):

> There may be cases in which the offense is "so heinous or so repugnant to common decency" that all in the military would, at first thought, at least, believe the accused should be sentenced to a punitive discharge. In such cases, it might perhaps be an allowable defense tactic to plead affirmatively only for leniency as to the period of confinement and accessory penalties.

(Citation omitted.)

In *United States v. Volmar,* 15 MJ 339, 340 (CMA 1983), we recognized the type of

concession that was made in this case. We should not shy away from that now. In that case, we held it was proper to suggest a bad-conduct discharge, rather than a dishonorable discharge. *Id.* at 342–43. As we stated:

> [S]ince defense counsel was performing his duties in a way which the trial judge would logically have assumed was in appellant's best interests, the judge had no obligation to stop the trial in order to interrogate appellant and his counsel as to whether the argument had been authorized by the client. . . . Moreover, asking appellant to decide whether defense counsel had made the very best tactical choice in arguing on an appropriate sentence would seem to be a fruitless exercise.

*Id.* at 343–44. In the end, we concluded:

> From our examination of this record, we conclude that defense counsel did not fall in his duties as an advocate by suggesting that—instead of adjudging a dishonorable discharge, as urged forcefully by the prosecutor—[the court members] impose only a bad-conduct discharge.

*Id.* at 344.

In summary, counsel should not be required to make hopeless or irrational arguments in their submissions to convening authorities. Such arguments only serve to undercut counsel's credibility with convening authorities and thus diminish their advocacy on behalf of their clients. I would hold that counsel was not deficient under the first prong of *Strickland* and, therefore, it is unnecessary to reach the second prong.

EFFRON, Judge (dissenting):

Throughout the sentencing and post-trial process, appellant consistently sought to preclude the adjudication and approval of a punitive discharge. His defense counsel negated his efforts during the post-trial process by affirmatively requesting that the convening authority approve a bad-conduct discharge.

There is no evidence of record that defense counsel's action—which undermined appellant's efforts to obtain a non-punitive, general discharge—was taken with appellant's knowledge or approval.

There is ample evidence, however, that defense counsel's request was contrary to appellant's wishes. During the trial, appellant made it clear that a bad-conduct discharge was not acceptable to him. Pointing out that he had been placed on administrative hold only 1 day before his enlistment was set to expire, he specifically told the military judge that he did not want to suffer the humiliation of a punitive discharge. At trial, defense counsel—consistent with appellant's wishes—pleaded for leniency and did not argue for a punitive discharge of any type.

After trial, appellant expressly continued his effort to avoid a punitive discharge. Appellant's father, mother, wife, and sister all wrote letters to the convening authority, each asking the convening authority to substitute a general discharge for the adjudged dishonorable discharge. These letters were contained in appellant's clemency package. In addition, as the majority opinion notes, appellant's own letter to the convening authority specifically requested "that my Dishonorable be change[d] to General."

As the Government expressly recognizes at page 4 of its brief, defense counsel may not ask a court-martial to impose a punitive discharge when contrary to a client's wishes. *United States v. Dresen*, 40 MJ 462, 465 (CMA 1994), citing *United States v. Robinson*, 25 MJ 43 (CMA 1987); *United States v. Webb*, 5 MJ 406 (CMA 1978); *United States v. Weatherford*, 19 USCMA 424, 42 CMR 26 (CMA 1970). When defense counsel seeks or concedes the appropriateness of a punitive discharge—even as a tactical step to accomplish mitigation of other elements of a possible sentence—counsel must make a record that such advocacy is pursuant to his client's wishes. *Id.*, citing *United States v. Lyons*, 36 MJ 425 (CMA 1993); *United States v. McNally*, 16 MJ 32 (CMA 1983).

This Court has extended these principles to post-trial advocacy that asks for or accepts the appropriateness of an adjudged punitive discharge. *See Dresen, supra* at 465. There is no indication in the record that defense counsel was acting pursuant to appellant's wishes. I would hold that defense counsel's

performance was deficient under the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In terms of the second prong, prejudice, I agree with the majority that in order to demonstrate prejudice, appellant need only make "some colorable showing of possible prejudice." *United States v. Wheelus*, 49 MJ 283, 289 (1998), quoting *United States v. Chatman*, 46 MJ 321, 323–24. The convening authority has the highly discretionary authority to approve or disapprove all or part of the sentence for reasons of clemency or otherwise as a matter of command prerogative. Appellant had a colorable case for clemency. His crimes were not violent, he was in his first term of enlistment, and he had been placed on administrative hold 1 day before the end of that enlistment. He asked for relief so that he could support his wife and daughter, both of whom had health problems.

The question is not whether we would grant clemency; it is whether defense counsel's actions deprived appellant of a reasonable opportunity to obtain clemency from the convening authority. Defense counsel, by conceding that a bad-conduct discharge was appropriate, made it easy for the convening authority to believe that the only clemency appellant wanted was reducing his dishonorable discharge to a bad-conduct discharge. Under these circumstances, defense counsel undermined the case made by appellant and his family for a general discharge.

A servicemember is entitled to the exercise of a convening authority's broad and unfettered discretion with the effective assistance of counsel. When counsel undermines the essence of his or her client's post-trial submission, that is both ineffective and prejudicial. I would return the case for a new post-trial proceeding.