UNITED STATES

v.

Jeffery G. PASSMORE, Aviation Systems Warfare Operator Airman Apprentice (E–2), U.S. Navy.

NMCM 9801418.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 20 Jan. 1998.

Decided 29 Sept. 2000.

LCDR Linda J. Lofton, JAGC, USN, Appellate Defense Counsel.

LT Kevin S. Rosenberg, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Senior Judge, OZMUN, and NAUGLE, Appellate Military Judges.

DORMAN, Senior Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of two separate specifications alleging use and possession of lysergic acid diethylamide (LSD) in violation of Article 112(a), Uniform Code of Military Justice, 10 U.S.C. § 912(a). The appellant was sentenced to 75 days confinement, forfeiture of $500 pay per month for two months, reduc-

tion to E–1, and a bad-conduct discharge. In accordance with his pretrial agreement, the convening authority approved the appellant's sentence as adjudged, but suspended all confinement in excess of 50 days for a period of six months from the date of trial.

We have examined the record of trial, the appellant's assignment of error, and the Government's response in accordance with Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). After careful review, we find that it is necessary to set aside the convening authority's action.

This case comes before the court for a second time. On 27 January 1999, we affirmed the findings and sentence in a *per curiam* decision. On 15 October 1999, the Court of Appeals for the Armed Forces issued an order setting aside our decision, as well as the convening authority's action, and returned the record for a new staff judge advocate's recommendation [SJAR] and convening authority's action. Our superior court ordered this action because it found that the staff judge advocate had included "new matter" in an addendum to his recommendation that was not provided to the appellant or his trial defense counsel. *United States v. Passmore*, 52 M.J. 467 (1999). Following that order, the record was returned to the convening authority and a new SJAR and action were prepared.

The appellant now alleges that he was denied effective post-trial assistance of counsel because his counsel did not contact him to determine whether he wished to submit any new clemency materials. He also claims that he was denied effective post trial assistance of counsel because the "new matter" identified by our superior court was not addressed in the new post trial documentation. While we find the appellant's first argument to have merit, we note that the new SJAR adequately addressed the "new matter" identified by our superior court.

Throughout the appellant's trial, the initial post-trial proceedings, and the post-trial proceedings directed by our superior court, the appellant was represented by the same military defense counsel, LT W.B. Ruiz, JAGC, USNR. Following the appellant's court-martial, LT Ruiz prepared a request for clemency on the appellant's behalf and submitted it to the convening authority. The request was sent via the trial counsel. In forwarding the request to the convening authority, the trial counsel prepared a substantive endorsement recommending denial of the clemency request. In his recommendation the trial counsel wrote, in part, "[c]lemency, if appropriate at all in this case, is not warranted until AWAR [sic] Passmore acts on his agreement to cooperate with law enforcement in the prosecution of drug offenses involving Naval members." Trial Counsel endorsement dated 6 March 1998. This recommendation was never provided to the appellant or his counsel, but in an addendum to the SJAR, it was provided to the convening authority—along with the clemency request—at the time the case was submitted to the convening authority for his action. It was the inclusion of the trial counsel's endorsement that resulted in the record being returned for a new SJAR and action.

At trial, Appellate Exhibit III was examined by the military judge and attached to the record.[1] In that document, the appellant asked that his copy of the SJAR be served upon LT Ruiz. Consistent with the appellant's request, the SJAR was delivered to LT Ruiz on 16 June 1998. Although LT Ruiz indicated in his receiving endorsement that he intended to submit comments in response to the SJAR, no comments were submitted. Instead, through a phone conversation with the staff judge advocate, LT Ruiz indicated that the only matters he wanted to bring to the convening authority's attention were those submitted in the request for clemency. SJA Supplemental Memorandum dated 14 July 1998, ¶¶ 1–2.

Following completion of the new SJAR on 6 January 2000, a copy of the SJAR was

---

1. We note the title of this exhibit is "Appellate and Post–Trial Rights: General Court–Martial Which Does Not Include Either a Punitive Discharge, Dismissal or Confinement For One Year or More." This is obviously not the correct form for use in the appellant's court-martial. Nevertheless, it specifically provides that the appellant wanted both the record of trial and the SJAR to be delivered to his trial defense counsel.

served on LT Ruiz on 10 January. The new SJAR corrected the inference contained in the trial counsel's endorsement that the appellant had not cooperated with law enforcement authorities. The new SJAR specifically advised the convening authority that the appellant had "cooperate[d] in the prosecution of related cases." SJAR dated 6 Jan. 2000, ¶ 5. By endorsement dated 14 January 2000, LT Ruiz acknowledged receipt of the SJAR and indicated that he did not desire to comment on the SJAR. We also note that a copy of the SJAR was also mailed to the appellant at the address he provided in his Appellate Rights Statement, which is attached to the record of trial. "Beverly Passmore," (apparently the appellant's mother) received the SJAR on 11 January 2000. Domestic Return Receipt; see also Defense Exhibit A. Then, on 31 January 2000, a new convening authority's action was executed. In taking his action, the convening authority specifically noted that he considered the recommendation of his staff judge advocate and the clemency petition submitted by the appellant's trial defense counsel. The action taken in this second convening authority's action is identical to that which was taken 18 months earlier.

The appellant asks us to either set aside his bad-conduct discharge or return the case for a new action. He seeks this remedy based upon his assertion that he was denied effective assistance of counsel during the post-trial proceedings ordered by our superior court. In support of his position the appellant has submitted the following information to us:

I was informed for the first time in April 2000 that my defense counsel had been given another opportunity to file clemency matter on my behalf. He did not contact me before waiving the opportunity to submit matter. LT Abele, one of the prosecutors, told me that my cooperation would be favorable when the convening authority considered my clemency request. Although a Lincoln Mercury dealership currently employs me, the discharge I received limits my employment prospects. There have also been significant changes in my life since I left the Navy and I would have liked to submit additional matters to the convening authority.

Appellant's Unsworn Declaration Under Penalty of Perjury, dated 18 May 2000. The Government has not rebutted any of the information contained in the appellant's declaration.

■■■ A military accused is entitled to effective assistance of counsel at all stages of his court-martial process, and such assistance post-trial is considered a "fundamental right." *United States v. Knight*, 53 M.J. 340, 342 (C.A.A.F.2000). Counsel are presumed to be competent even when representing a client post-trial. *United States v. Lee*, 52 M.J. 51, 52 (1999). To overcome this presumption, the burden is upon an accused to "show that his counsel was deficient, and that he was prejudiced by the deficiency." *Lee*, 52 M.J. at 52 (*citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under the prejudice prong of *Strickland*, an accused is required to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Howard*, 47 M.J. 104, 106 (1997)(*quoting Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Our reading of the decisions of our superior court concerning allegations of post-trial ineffectiveness of counsel lead us to conclude that a servicemember's burden of establishing the prejudice prong in such cases is not as demanding as required by *Strickland*.

Errors in post-trial representation can be tested for prejudice. However, because of the highly discretionary nature of the convening authority's clemency power, the threshold for showing prejudice is low. This Court will give the appellant the benefit of the doubt and find that there is a material prejudice to the substantial rights of an appellant if there is an error and the appellant makes some colorable showing of possible prejudice.

*Lee*, 52 M.J. at 53 (internal citations and quotes omitted). *See also United States v. Anderson*, 53 M.J. 374, 378 (C.A.A.F.2000).

**518**

 In this case, the appellant's trial defense counsel elected not to submit matters to the convening authority after he was served with the SJAR on 10 January 2000. He apparently made this decision without contacting his client, who had already left on appellate leave. "Defense counsel is responsible for post-trial tactical decisions, but he should act 'after consultation with the client where feasible and appropriate.'" *Lee,* 52 M.J. at 52, *quoting United States v. MacCulloch,* 40 M.J. 236, 239 (C.M.A.1994). *See also United States v. Hicks,* 47 M.J. 90, 93 (1997). Between the date of the initial convening authority's action and the service of the second SJAR upon the trial defense counsel, 17 months had elapsed in this case. Adequate representation in such cases necessarily includes consultation with one's client. By demonstrating that his attorney did not contact him prior to the attorney electing not to comment on the new SJAR, the appellant has overcome the first prong of *Strickland.*

As we have noted above, in order to meet the requirements of *Strickland's* second prong in this case, the appellant is only required to make a colorable showing of possible prejudice. *Lee,* 52 M.J. at 53. Based on the contents of the appellant's post-trial unsworn declaration, we must afford him the benefit of the doubt. We, therefore, find that he has met the minimal requirements to overcome the presumption that he was afforded adequate post-trial representation when his case was returned for a new SJAR and action.

The action we take in this case is driven by the clear guidance from our superior court. We need not concern ourselves with the question of whether the appellant's presentation will result in clemency. Rather, our focus is upon whether there is a "colorable showing of prejudice that warrants remand of the record for a new recommendation and an opportunity for appellant to respond to the recommendation before the convening

authority acts." *United States v. Howard,* 47 M.J. at 108.[2]

**Conclusion**

Accordingly, the action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Navy for a new SJAR and action. Following those proceedings, the record will be returned to this court for further review under Article 66(c), UCMJ.

Judge OZMUN and Judge NAUGLE concur.

---

**2.** In such cases of remand for a new SJAR and action, staff judge advocates and convening authorities would be wise to obtain a waiver of response directly from the appellant, or otherwise document that the appellant's counsel has coordinated the response with the appellant. This documentation could easily be accom-

plished by amending the standard receiving endorsement of the SJAR signed by the appellant's counsel. The amendment could contain language such as, "I received the SJAR on (date). After consultation with my client, I do/do not desire to comment."