BAKER, Judge
(concurring in the result):
During sentencing, the assistant defense counsel (ADC) argued against both confinement and a discharge. “Confinement, in this case, is not appropriate,” the ADC argued. “The prosecution hasn’t provided you with any reasonable justification for confinement and that’s because there isn’t any.” The ADC also argued against a discharge, making it clear that the views expressed reflected appellant’s explicit desire to remain in the Air Force. She said:
The Air Force can keep him working. They trained him as a linguist and they can keep him on the job and have him be a productive member of the Air Force____ He enjoys being a linguist; its challenging for him and he would like for you to give him the opportunity to get back to work____ You can reduce him to E-l. Take the rank ... take away some of his pay. But do not give him a punitive discharge---- He’s eighteen. He’s young. He’s naive. But if you give him a punitive discharge, that’s going to follow him around for the rest of his life.
The defense also called appellant’s uncle. The uncle testified that confinement “would be the worst thing for him.” When the ADC asked the uncle about a punitive discharge, the military judge sustained trial counsel’s objection to the question. Having argued against both confinement and a discharge, the ADC nonetheless closed her statement, saying: “If you must choose between confinement and a bad-conduct discharge, give him the punitive discharge.” Defense counsel offered nothing to suggest this reflected appellant’s position or priorities. Although a close call, in this factual context, the ADC’s statement amounted to a concession where the appellant was squarely exposed to both a punitive discharge and 10 years’ confinement for a violent crime. The ADC let the members off her sentencing argument hook. Accepting that they might disregard her argument, she steered members to a punitive discharge by arguing a preference against confinement.
It is error for defense counsel to concede the appropriateness of a bad-conduct discharge in sentencing argument without an adequate record that appellant agreed with this argument. United States v. Pineda, 54 MJ 298, 299, 301 (2001). In United States v. Volmar, 15 MJ 339 (CMA 1983), this Court recognized that there may be good tactical reasons representing the best advocacy on behalf of the accused to concede a bad-conduct discharge, where “there really was no alternative of retention in the service.” Id. at 343. However, the present case is distinguishable from Volmar because there is “some evidence in the record which fairly indicates that the accused desire[d] to be retained in the service despite his conviction.” Id. at 341.
Here, the evidence is clear and unequivocal. Appellant’s counsel stated: “He enjoys being a linguist ... and he would like for you to give him the opportunity to get back to work____ [D]o not give him a punitive discharge.” Thus, in the absence of “an adequate record of appellant’s desire that a punitive discharge be actually imposed,” it is error for defense counsel to concede a punitive discharge, regardless of tactical motive. Pineda, 54 MJ at 301. As important, in this context, the military judge erred by not inquiring into the apparent contradiction between a sentencing statement that presents the client’s desire to avoid confinement and discharge, and yet invites the members to choose one over the other in closing. See United States v. Lyons, 36 MJ 425, 427 (CMA 1993).
A realistic assessment of possible outcomes is good lawyering. However, a fundamental representational choice, such as a decision whether to seek to stay in the service or passively accept a punitive discharge, is for the client to make. As a result, case law dictates that judges test an apparent ambiguity between counsel’s argument and the accused’s desires. Military judges should do so for appearance reasons as well. Defense counsel may be perceived by some members of the public as wearing the same uniform as *430 the prosecution — no matter how zealously and effectively they pursue their distinct and independent mission.
Nonetheless, “[a] finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.” Art. 59(a), UCMJ, 10 USC § 859(a). Case law further informs the statutory test for harmless error:
[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.
United States v. Pollard, 38 MJ 41, 52 (CMA 1993), quoting Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).
In Pineda, this Court put a further gloss on the test for harmless error when assessing counsel concession on discharge: “[W]e assessed the impact of that error on the approved sentence to determine whether sufficient prejudice existed for a finding of ineffective assistance of counsel under the second prong of the test in Strickland v. Washington[.]” 54 MJ at 301. Thus, “where the facts of a given case compel a conclusion that a bad-conduct discharge was reasonably likely, we do not normally order a new sentence hearing.” Id.
Appellant faced a maximum punishment including a dishonorable discharge, 10 years’ confinement, reduction to the lowest enlisted grade, and total forfeitures. Para. 47e(2), Part IV, Manual for Courts-Martial, United States (1998 ed.). The Government recommended a sentence of a bad-conduct discharge, 12 months confinement, reduction to the lowest enlisted grade, and total forfeitures. As is apparent, the Government’s recommendation was substantially below the maximum confinement exposure. The panel awarded appellant no confinement. This suggests that both the panel and the Government weighed factors in mitigation when considering appellant’s sentence. However, it does not necessarily follow that judgments about confinement parallel judgments about punitive separation. A bad-conduct discharge addresses a distinct facet of punishment, namely whether an accused should be separated from the service under conditions of dishonor, whether or not he or she is confined.
In this case, the record reflects a premeditated crime of robbery, involving the violent employment of a knife in a manner that might well have resulted in death or serious injury. Appellant’s record of service includes two letters of reprimand. Appellant may have been duped, and he may be naive, but there is no question that he placed himself in a position of trouble on three separate occasions, including one occasion involving pornographic filming.
Nor does the disposition of Airman Miller’s case change this analysis. Appellant, and not Miller, was the central protagonist in this crime. It was appellant, not Miller, who engaged in pornographic filming. Miller’s record of service is not at issue and not part of the record. Therefore, the disposition of Miller’s case cannot meaningfully serve as a point of reference for appellant’s case in the absence of a claim alleging a violation of the rule in United States v. Lacy, 50 MJ 286 (1999).
Based on these facts, a bad-conduct discharge was reasonably likely. Moreover, a reasonable person would not be left in doubt, let alone grave doubt, that counsel’s closing statement would have substantially swayed appellant’s panel into awarding a bad-conduct discharge.