# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class ZAVIAN M. T. ADDISON
### United States Air Force

## ACM S32287

## 6 May 2016

Sentence adjudged 3 December 2014 by SPCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Military Judge: Gregory O. Friedland.

Approved Sentence: Bad-conduct discharge, confinement for 30 days, and reduction to the grade of E-1.

Appellate Counsel for Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Captain Rebecca A. Magnone and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and BENNETT
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BENNETT, Judge:

At a special court-martial composed of a military judge sitting alone, Appellant pleaded guilty to two specifications of physically controlling a passenger car while drunk, two specifications of assault consummated by a battery, and three specifications of communicating a threat in violation of Articles 111, 128, and 134, UCMJ, 10 U.S.C. §§ 911, 928, and 934. The military judge sentenced him to a bad-conduct discharge, confinement for 45 days, and reduction to the grade of E-1. Pursuant to a pretrial

agreement, the convening authority approved only the bad-conduct discharge, confinement for 30 days, and reduction to the grade of E-1.

Appellant contends that (1) he is entitled to new post-trial processing because the staff judge advocate (SJA) failed to correct an error in Appellant's clemency submission, and (2) that the trial counsel made an improper sentencing argument. We disagree and affirm the findings and sentence.

*Background*

The crimes that Appellant pleaded guilty to were fueled by alcohol and took place over the course of approximately five days. On or about 6 April 2014, the trouble started when two Airmen came upon Appellant who was drunkenly urinating on a vehicle in their dormitory parking lot. They offered him assistance when they saw how inebriated he was. In response, Appellant threatened to kill one of the Airmen and rape the other. Then he assaulted them. Soon after, security forces responded and Appellant was found drunk in his parked car. After he was apprehended, he threatened to beat one of the officers. On or about 11 April 2014, Appellant was again apprehended on suspicion of drunk driving on Joint Base Pearl Harbor-Hickam.

Additional facts necessary to resolve the assigned errors are included below.

*Post-trial Processing*

In his clemency submission, Appellant's trial defense counsel erroneously interpreted an amendment to Article 60, UCMJ, 10 U.S.C. § 860—one that limits a convening authority's ability to mitigate an accused's sentence post-trial—to be applicable in Appellant's case. This amendment was made pursuant to Section 1702(b) of the National Defense Authorization Act of Fiscal Year 2014 (2014 NDAA) and was not effective for crimes committed prior to 24 June 2014. Appellant was convicted of offenses that occurred on or about 6 and 11 April 2014. Hence, the trial defense counsel's interpretation of the amendment's applicability was mistaken. In his first asserted issue, Appellant argues that he is entitled to new post-trial processing because the staff judge advocate (SJA) failed, in his addendum to the staff judge advocate's recommendation (SJAR), to correct the trial defense counsel's mistake.

We review allegations of error in post-trial processing de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). If defense counsel fails to timely comment on an error or omission in the SJAR, that error is waived unless it is prejudicial under a plain error analysis. *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). To prevail, under plain error review, Appellant must demonstrate: "(1) there was an error; (2) it was plain or obvious, and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Kho*, 54 M.J. at 65). "[B]ecause of the highly discretionary nature of the convening authority's

clemency power, the threshold for showing [post-trial] prejudice is low." *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999). Only a colorable showing of possible prejudice is necessary. *Id.* Even so, an error in the SJAR "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id.*

Under Rule for Courts-Martial (R.C.M.) 1106(d)(4), an SJA is only required to state whether corrective action is needed if the defense makes an allegation of legal error in the matters submitted under R.C.M. 1105 or it is otherwise deemed appropriate by the SJA. *United States v. Foy,* 30 M.J. 664, 666 (A.F.C.M.R. 1990). "[T]he staff judge advocate is not required to specifically advise the convening authority on issues the appellant raises in [his] clemency submissions unless those issues are raised as legal error." *United States v. Taylor*, 67 M.J. 578, 580 (A.F. Ct. Crim. App. 2008). While the trial defense counsel may have erroneously interpreted a 2014 NDAA amendment to Article 60, UCMJ, as being effective and applicable to the convening authority, he did not allege any legal errors in his clemency submission. The SJAR in this case correctly indicates that no corrective action was required with regard to the findings or sentence. The SJAR and addendum complied with the requirements of R.C.M. 1106(d)(4). Appellant has not met his burden to show plain error in post-trial processing.

*Improper Sentencing Argument*

Assistant trial counsel argued, during presentencing and without objection, that Appellant deserved a bad-conduct discharge because it was like a brand and it was the best characterization of his service in the Air Force. Appellant now cites our decision in *United States v. Gehlhausen*, ACM 35280 (A.F. Ct. Crim. App. 14 October 2004) (unpub. op.), for the proposition that it was improper for the assistant trial counsel to argue that a bad-conduct discharge was an appropriate punishment because it was the best characterization of Appellant's service. Because there was no objection, we review the propriety of the assistant trial counsel's argument for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013). To prevail under plain error analysis, Appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

*Gelhausen* is distinguishable from the present case. In *Gelhausen*, we cited our superior court's decision in *United States v. Ohrt,* 28 M.J. 301 (C.A.A.F. 1989), and we agreed with Appellant that it was "improper to describe a punitive discharge as a service characterization." *Gelhausen*, unpub. op. at 11. At first blush, this language from *Gelhausen* seems to support Appellant's argument. However, the *Ohrt* decision is rooted

in R.C.M. 1001(b)(5) which is the procedural rule that governs the admission of evidence of rehabilitative potential. In *Ohrt*, our superior court was faced with the question of whether it was improper for the prosecution to elicit testimony from the appellant's squadron commander concerning whether the appellant should be retained or separated. *Ohrt,* 28 M.J. at 304–305. The court concluded that:

> RCM 1001(b)(5) was not designed to give the prosecutor an opportunity to influence court members to punish the accused by imposing a punitive discharge. It also was not intended to be a vehicle to make an administrative decision about whether an accused should be retained or separated.

*Id*. at 306.

The court reasoned that the line of questioning employed by trial counsel during sentencing had "misplac[ed] the role of the punitive discharge in the military justice sentence model." *Id*. at 305. A punitive discharge serves a different purpose than an administrative discharge. *Id*. The former is a punishment that a court-martial is convened to consider. *Id*. The latter is an administrative termination of employment.[1] Moreover, the court held that the question of how to punish an accused—including whether to punish an accused with a punitive discharge—was a decision reserved solely for the sentencing authority. *Id*. Thus, it was wrong for the Government to offer testimony that could improperly influence the sentencing authority, such as testimony from the accused's squadron commander that he should be punitively discharged. *Id*. The holding in *Ohrt* was not about what should or should not be argued by trial counsel during sentencing.

If there were any questions about the meaning of our holding in *Gelhausen*, they should have been laid to rest by our more recent decision in *United States v. Lozano,* ACM S32043 (A.F. Ct. Crim. App. 19 September 2013) (unpub. op.). In that case we found no error where the trial counsel repeatedly argued that a bad-conduct discharge would be the appropriate service characterization for the appellant.

There is nothing wrong with describing a bad-conduct discharge as a negative service characterization. It is, after all, a discharge one becomes eligible for after committing some type of *bad* conduct.[2] How, then, could it be improper for a trial counsel

---

[1] It is worth noting that, for administrative discharges, there are three different discharge characterizations: Honorable, Under Honorable Conditions (General), Under Other than Honorable Conditions. Air Force Instruction (AFI) 36-3208, *Administration Separation of Airmen*, ¶ 1.16.1 (9 July 2004).

[2] R.C.M. 1003(b)(8)(C) describes the nature of this type of punitive discharge as follows:

> *A bad-conduct discharge is less severe than a dishonorable discharge and is designed as a punishment for bad-conduct* rather than as a punishment for serious offenses of either a civilian or military nature. It is also appropriate for an accused

to argue that an accused deserves a bad-conduct discharge because he or she behaved badly, broke the law, or did anything else that, arguably, would call for a negative service characterization?

As noted by our superior court:

> The punitive discharge was designed to sever a servicemember from the military community and to put a mark upon him which would make it difficult for him to reenter the civilian society and economy. The punitive discharge thus had two effects by design: first, it punished by ejection from a familiar society and by imposing social and economic hardships; and, second, it deterred others by its visible, swift, effective and harsh character.
>
> *The punitive discharge is a stigma. It is a badge of dishonor*, and it has a significant historical background and basis. Importantly, it can be adjudged with or without regard to whether an accused has rehabilitative potential.

*Ohrt,* 28 M.J. at 306 (internal citation omitted) (emphasis added).

Nevertheless, a problem does arise when a trial counsel blurs the lines between punitive and administrative discharge. *Lozano*, unpub. op. at 7–8 (citing *United States v. Motsinger*, 34 M.J. 255, 256 (C.A.A.F. 1992)). However, that did not happen in the case at bar. Thus, there was no error, plain or otherwise.[3]

Furthermore, we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. §

---

who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary . . . .

(Emphasis added). *See also* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 8-3-23 (10 September 2014) ("The stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose *discharge characterization* indicates that (he) (she) has served honorably.") (emphasis added).

[3] Even if the assistant trial counsel's argument had been improper, Appellant's case was tried before a military judge sitting alone, and "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). The Court of Appeals for the Armed Forces has also recognized, "[a]s part of this presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments." *Id.*; *see also United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) ("As the sentencing authority, a military judge is presumed to know the law and apply it correctly absent clear evidence to the contrary.").

866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). We have considered this particular appellant, the nature and seriousness of his offense, his record of service, all matters contained in the record of trial, and his arguments on appeal and we find the approved sentence is appropriate.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM S32287