# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**
**v.**
**Private E1 JORDAN R. AXTELL**
**United States Army, Appellant**

ARMY 20120267

Seventh U.S. Army Joint Multinational Training Command
Christopher T. Fredrikson, Military Judge
Lieutenant Colonel David E. Mendelson, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Aaron R. Inkenbrandt, JA (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Major Robert A. Rodrigues, JA; Captain Sasha N. Rutizer, JA (on brief).

5 June 2013

----------------------------------
OPINION OF THE COURT
----------------------------------

ALDYKIEWICZ, Judge:

On 28 February 2012, a military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of conspiracy to distribute methamphetamines, distribution of methamphetamines, wrongful use of methamphetamines, and wrongful use of marijuana, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. § 881, 912a (2006) [hereinafter UCMJ].  The convening authority approved the adjudged sentence to a bad-conduct discharge and confinement for 135 days.  Appellant was credited with 92 days against his sentence to confinement.

Appellant's case is before this court for review pursuant to Article 66, UCMJ.  Appellant raises one assignment of error, alleging that he was denied his opportunity to request deferment of automatic forfeitures during the post-trial phase of his court-

----
[1] Judge MAGGS took final action while on active duty.

martial.  For the reasons discussed below, we find appellant's allegation to be without merit.

**BACKGROUND**

On 7 February 2012, three weeks prior to appellant's court-martial, Captain (CPT) MF discussed appellant's post-trial rights with him using a standard Defense Counsel Assistance Program (DCAP) Post-Trial and Appellate Rights form (PTAR).[2] The PTAR advised appellant that if convicted and forfeitures were adjudged, he could petition the convening authority to defer those forfeitures.  The PTAR also advised appellant that if his sentence included confinement for more than six months or any confinement and a punitive discharge, Article 58b, UCMJ would result in the automatic forfeiture of two-thirds of his pay during his confinement.  As with adjudged forfeitures, the PTAR advised appellant he could request the convening authority defer the automatic forfeitures as well.[3]

The PTAR used, however, did not stop at simply advising appellant of his rights regarding deferment and waiver of automatic forfeitures.  The PTAR also contained a separate section in which appellant could indicate whether he would like to exercise the rights of which he was just advised, stating in part:

> e.  I do . . . want to request deferment of automatic . . . forfeitures.

On 28 February 2012, appellant was convicted and sentenced to a bad-conduct discharge and 135 days of confinement.  Although forfeitures were not adjudged, appellant's sentence resulted in automatic forfeitures.  The record is absent of any request to the convening authority on appellant's behalf to defer those automatic forfeitures.

Following trial, CPT MF submitted clemency matters on appellant's behalf to the convening authority pursuant to Rules for Courts-Martial [hereinafter R.C.M.] 1105 and 1106.  This clemency submission consisted entirely of a memorandum from CPT MF.  Appellant did not submit a personal letter with the clemency

_____

[2]  The PTAR is entitled "DCAP Form 3.2 (Sep 2011) (Post-Trial and Appellate Rights)."

[3]  In addition to advising appellant regarding the right to request deferment of both adjudged and automatic forfeitures, the PTAR advised appellant of his right to request that the convening authority waive Article 58b, UCMJ, automatic forfeitures for the benefit of his dependents, if any.

AXTELL—ARMY 20120267

submission. The memorandum submitted by CPT MF on appellant's behalf requested that the convening authority disapprove a portion of the findings of guilty as well as appellant's bad-conduct discharge. The clemency submission is silent regarding automatic forfeitures.

**LAW AND DISCUSSION**

We reject appellant's claim of error in the post-trial processing of his case. Appellant's assertion that his trial defense counsel did not request deferment of his automatic forfeitures is undisputed.[4] However, we conclude that appellant understood his post-trial rights, was competently represented by defense counsel, and, therefore, has failed to demonstrate any error occurred.

Our resolution of this issue turns on the presumption that appellant's trial defense counsel was competent. In the military, an appellant is guaranteed the effective assistance of counsel during the post-trial phase of their court-martial. *United States v. Lee*, 52 M.J. 51, 52 (C.A.A.F. 1999). "In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984)." *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011). To establish ineffective assistance of counsel, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). This Court applies a three-part test to determine whether the presumption of competence has been overcome:

> 1. Are the allegations true, and, if so, is there any reasonable explanation for counsel's actions?

---

[4] Although the parties agree that no deferment request was made, the judges concurring in the result do not, characterizing appellant's elections on the PTAR as an explicit request for deferment. *United States v. Axtell*, __ M.J. ___ (9) (Army Ct. Crim. App. 2013) (Krauss, J., concurring in the result). This is incorrect. The PTAR is designed to advise appellant of his rights. It is not addressed to the convening authority and does not make any specific requests. The PTAR simply indicates appellant's desire to make such a request in the future. In fact, appellant himself does not claim that he made a deferment request by filling out the PTAR; instead, appellant specifically avers before this court that he was denied the "opportunity" to do so.

3

> 2. If the allegations are true, did counsel's performance fall measurably below expected standards?
>
> 3. Is there a reasonable probability that, absent the errors, there would have been a different outcome?

*United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991).

In the case before us, appellant has not alleged that his trial defense counsel was ineffective, either in the brief submitted by his appellate defense counsel, in matters submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), or by way of sworn affidavit or declaration under the penalty of perjury. Thus, there are no factual assertions that require an assessment of truth under the first part of the *Polk* test. Instead, appellant cites *United States v. Fordyce*, 69 M.J. 501 (Army Ct. Crim. App. 2010) (en banc), and assigns this error under the rubric of a "lost opportunity." As appellant points out, in *Fordyce* this court granted relief when the appellant was not "afforded a full opportunity to present matters to the convening authority prior to his action on the case." *Id.* at 504 (quoting *United States v. Hawkins*, 34 M.J. 991, 995 (A.C.M.R. 1992)). Therefore, as styled in the present case, appellant's allegation sounds strictly in the claim of error recognized in *Fordyce*—not in constitutional guarantees to effective assistance of counsel.[5] We have misgivings about the viability of such an approach.

The *Fordyce* Court was not faced with a naked assertion that the appellant lost his opportunity to request a deferment of forfeitures from the convening authority. In *Fordyce*, the appellant claimed he was not properly advised by his trial defense counsel about those very rights. The appellant filed a sworn declaration with the court alleging ineffective assistance of counsel, "specifically [averring] his trial defense counsel never explained deferral or waiver of forfeitures to him." *Id.* at 502. Consequently, the court ordered a response from the appellant's trial defense counsel, who filed an affidavit that did not meaningfully disagree with appellant's assertions. Presented with, at a minimum, a prima facie case of ineffective assistance of counsel, the *Fordyce* Court declined to decide that issue, instead ruling that there was error in the post-trial handling of appellant's case that required relief. *Id.* at 504.

---

[5] The concurring judges would transform appellant's tightly delineated claim of a lost opportunity to request deferment into a claim of ineffective assistance of counsel, despite the fact that appellant chose not to allege ineffective assistance of counsel, brief that issue, or submit an affidavit or declaration under penalty of perjury in support of such a claim. We decline to engage in such a transformation.

Here, however, appellant has not set forth a prima facie case of ineffective assistance of counsel. *See United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997); *United States v. Gunderman*, 67 M.J. 683 (Army Ct. Crim. App. 2009). In fact, appellant does not allege that his trial defense counsel was ineffective. Appellant does not claim that he was improperly advised of his post-trial rights nor has he submitted to this court a sworn affidavit or declaration under the penalty of perjury. Thus, appellant's case differs significantly from *Fordyce*.

Unlike *Fordyce*, appellant's trial defense counsel properly advised appellant of his post-trial rights, and appellant has not alleged that his trial defense counsel's performance was deficient. Without such an allegation, we will not invade the attorney-client privilege by ordering an explanation from appellant's trial defense counsel. *See United States v. Ellis*, 47 M.J. 20, 22 (C.A.A.F. 1997).[6] Therefore, we are circumscribed in our approach to assessing the merit of appellant's post-trial claim. In *Fordyce*, the appellant submitted a declaration averring ineffective assistance of counsel, and the court, in turn, ordered a response from his defense counsel. Procedurally, this provided a basis for the court to make post-trial findings of fact. *See United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). The appellate filings in the instant case provide no such basis for fact-finding.

In relation to his claim of error, appellant only established that, twenty-one days prior to his court-martial, he wanted his trial defense counsel to submit on his behalf a request for deferment of automatic forfeitures to the convening authority.

---

[6] The judges concurring in the result state that this court "may lawfully order appellant's defense counsel to submit an affidavit to address appellant's allegations," finding any attorney-client privilege is waived, in so much as the deferment is concerned, based on the PTAR and appellate pleadings, without any express accusation of ineffective assistance of counsel from appellant. *Axtell*, __ M.J. at ___ (11–12). In *Ellis*, the appellant specifically alleged his defense counsel was ineffective yet failed to support this post-trial claim of ineffectiveness with an affidavit. Faced with an allegation of ineffectiveness, the *Ellis* Court stated, in no uncertain terms: "[W]e are reluctant to invade the lawyer-client privilege by ordering an explanation from trial defense counsel until appellant *personally* (not merely through argument of appellate counsel) attacks his counsel." *Id.* at 22. It is also telling that the two cases cited by the concurrence in support of invading the attorney-client privilege, *United States v. Melson*, 66 M.J. 346, 350–51 (C.A.A.F. 2008), and *United States v. Lewis*, 42 M.J. 1, 5–6 (C.A.A.F. 1995), both involved allegations of ineffective assistance of counsel in which affidavits were filed by the appellants, not "lost opportunity" claims grounded in *Fordyce*. On the facts of this case, without more, we decline to direct appellant's defense counsel to disclose protected information.

5

This is only supported by the PTAR, which advised appellant of his right to submit a request for deferment of automatic forfeitures.  However, the PTAR does not by itself establish that an error occurred in the post-trial handling of appellant's case. Appellant's elections on the PTAR, which occurred three weeks prior to court-martial, are fixed in time.  We have no way of knowing whether appellant, following trial and on the advice of counsel, decided to forgo submission of such a request. Appellant has not set forth any facts to contradict such a conclusion, and because appellant's claim rests solely on post-trial representation, the record is devoid of any facts to the contrary.

On the other hand, the record does establish appellant was represented by trial defense counsel throughout the post-trial process, appellant did not complain of automatic forfeitures in his post-trial submissions to the convening authority, and the law presumes appellant's counsel was competent, *e.g.*, *Cronic*, 466 U.S. at 658. We will not lightly cast aside that presumption to disturb the result of such an important stage of the court-martial process.

Following *Fordyce* and based in part on advice contained within that decision, DCAP developed a form to ensure that trial defense counsel properly advise their clients of their post-trial and appellate rights, advice often provided days or weeks before announcement of the sentence.  Absent a sworn affidavit or declaration under penalty of perjury that appellant's trial defense counsel failed to execute appellant's post-trial wishes, we are unwilling to elevate form over substance and interpret the standard DCAP PTAR as a specific request for deferment (and/or waiver) of forfeitures that must be acted upon by a convening authority, the failure of which would result in a new staff judge advocate recommendation and action upon "some colorable showing of possible prejudice."[7]  *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998).

---

[7]  The judges concurring in the result propose that a staff judge advocate: (1) "should at a minimum present the [PTAR] to the convening authority with a recommendation for approval or disapproval in his addendum to the post-trial recommendation"; and (2) upon receipt of an unsupported PTAR, "should ascertain from the defense whether any follow-up documentation is forthcoming and convey that, if not, the request would be presented to the convening authority with recommendation as is."  *Axtell*, __ M.J. at ___ (12).  These propositions not only cut against the basic presumption of defense counsel's competence but also unnecessarily task staff judge advocates.  Neither *Fordyce* nor the Rules for Courts-Martial require such treatment of a form designed to document notice and advice provided to the accused.  *See Fordyce*, 69 M.J. at 504 n.2.

**CONCLUSION**

On consideration of the entire record, and the assigned error, we find appellant's argument to be without merit. We hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Chief Judge AYRES, Senior Judge KERN, Senior Judge COOK, Judge GALLAGHER, Judge HAIGHT, and Judge MARTIN concur.

MAGGS, Judge, concurring:

I generally agree with the court's reasoning and judgment, but I write separately to explain my additional views.

The precise legal theory underlying appellant's assignment of error is unclear. As the court correctly asserts, appellant has not alleged that his trial defense counsel is ineffective. At the same time, however, appellant relies on two cases in which ineffective assistance of counsel was asserted: *United States v. Lee*, 52 M.J. 51 (C.A.A.F. 1999), and *United States v. Watkins*, ARMY 20110040, 2012 WL 1956767 (Army Ct. Crim. App. 30 May 2012) (summ. disp.). In these circumstances, I think it is best to decide this case by comparing it to the principal precedents that he cites. This comparison, in my view, requires us to affirm the findings and sentence.

In *United States v. Lee*, the appellant said at trial that he did not want to suffer the humiliation of a punitive discharge. In addition, the appellant and some of his family members asked the convening authority to disapprove a dishonorable discharge and allow him to leave the Army with a general discharge. The appellant's defense counsel, however, in contradiction to these stated positions, asked the convening authority to commute the dishonorable discharge to a bad-conduct discharge. The convening authority approved the dishonorable discharge. The appellant subsequently asserted that his defense counsel was ineffective, but our superior court affirmed. *See Lee*, 52 M.J. at 52–53.

In *Lee*, our superior court recognized that an ineffective assistance claim requires a showing that counsel was deficient and that the appellant was prejudiced. *See id.* On the issue of deficiency of counsel, the court noted:

> [T]here is no assertion and no evidence that defense counsel did not consult with appellant before submitting the clemency package. Furthermore, there is no evidence that, once appellant was confronted with the possibility that the convening authority would approve the adjudged dishonorable discharge, he told his

7

> defense counsel that he objected to asking the convening authority
> to reduce the dishonorable discharge to a bad-conduct discharge.

*Id.* at 52–53.  While these factors suggested that Appellant Lee's counsel had not been shown to be deficient, the court ultimately concluded that it did not have to decide the issue of deficiency because the appellant had suffered no prejudice.  *See id.* at 53.  The Court reasoned:  "The record demonstrates that the convening authority would not have disapproved the dishonorable discharge, because he was unwilling to take the lesser step of commuting it to a bad-conduct discharge."  *Id.*

The present case is indistinguishable from *Lee*.  As in *Lee*, it is far from clear that appellant's counsel was deficient even though he did not follow a prior request to submit deferral requests to the convening authority.  In this case, as in *Lee*, there is no assertion and no evidence that appellant and his defense counsel did not consult about whether to submit deferral requests or that appellant objected to not submitting any such requests following such consultation.  And in this case, as in *Lee*, there is no showing of possible prejudice.  The convening authority denied any clemency.  Appellant has not suggested in his brief any reason that the convening authority might have thought deferral of automatic forfeitures would be appropriate even if it had been asked for.

In our unpublished decision in *United States v. Watkins*, ARMY 20110040, 2012 WL 1956767 (Army Ct. Crim. App. 30 May 2012) (summ. disp.), we reached a different conclusion, and set aside the convening authority's action where defense counsel did not request automatic forfeitures as instructed by his client.  The *Watkins* case is different, however, because the record contained substantial evidence of possible prejudice.  We noted in that case that the appellant had "expressed great concern for the care and support of his wife and child, both during trial and in his post-trial clemency submissions."  *Watkins*, 2012 WL 1956767, at *1. There is nothing comparable in this case; appellant is a Private E-1 with no dependents, and he expressed no such concerns.

For these reasons, I would follow *Lee*, distinguish *Watkins*, and affirm the findings and sentence.


KRAUSS, Judge, with whom Senior Judge YOB and Judge BURTON join, concurring in the result:

I disagree with the majority opinion but concur in the result because, though the majority does not address the issue, appellant here fails to make a colorable showing of possible prejudice.

The court's rationale and holding are contrary to established precedent, unnecessary for the proper resolution of the issues at hand, and accepting of practices that fall beneath that which we expect of both trial defense counsel and staff judge advocates (SJAs).

Appellant's Post-Trial and Appellate Rights (PTAR) form was attached to the record as an appellate exhibit, reviewed by the judge with appellant on the record and includes an explicit election to request deferment. Precedent of both our superior court and this court require that we consider allegations of prejudicial deficiencies in post-trial processing when those allegations are based on the record of trial or assertions by affidavit. *United States v. Ellis*, 47 M.J. 20, 22 (C.A.A.F. 1997); *United States v. Gunderman*, 67 M.J. 683, 686 (Army Ct. Crim. App. 2009) ("To be admissible before this court, factual assertions must be contained in an appellate record of trial or admitted in a proper form . . . . However, assertions of *fact*, even from an appellant, must either be contained in the record or offered in an admissible form."). If the allegation is supported by the record, there is no need for appellant to submit an affidavit. *Ellis*, 47 M.J. at 22. The court in *Ellis*, for example, refused to order an affidavit from defense counsel, stating: "Based on the state of the record before us, it is impossible to tell whether, at the time the convening authority acted, there were any current clemency matters to consider. The record lacks a statement from appellant asserting that trial defense counsel acted contrary to his desires, and there is no evidence to suggest trial defense counsel was deficient in failing to submit clemency matters." *Id.* Here it is not impossible to tell whether there was a request for the convening authority to consider, and the fact that none was presented is evidence suggesting that trial defense counsel was deficient.

Defense counsel are required to submit the post-trial matters that their clients want to submit, even over defense counsel's objection after necessary consultation. *United States v. Hicks*, 47 M.J. 90, 93 (C.A.A.F. 1997); *United States v. Lewis*, 42 M.J. 1, 4 (C.A.A.F. 1995); *United States v. Clemente*, 51 M.J. 547, 551 (Army Ct. Crim. App. 1997). Concomitantly, SJAs are obligated to present those matters to the convening authority. Uniform Code of Military Justice art. 60(c)(2), 10 U.S.C. § 860(c)(2) (2006); *United States v. Craig*, 28 M.J. 321, 324–25 (C.M.A. 1989); *United States v. Hallums*, 26 M.J. 838, 841 (A.C.M.R. 1988); Rules for Courts-Martial [hereinafter R.C.M.] 1101(c) and (d); 1107(b)(3)(A)(iii). When, on the record, an appellant explicitly requests submission of a request for deferment to the convening authority and there is no indication on the record that the request was submitted, error, whether it be defense counsel deficiency or SJA failure, is established. *See Ellis*, 47 M.J. at 22; *United States v. Fordyce*, 69 M.J. 501, 505 (Army Ct. Crim. App. 2010) (en banc).

Here appellant explicitly requested submission of requests for deferment of automatic forfeitures and confinement. This election was made on the record, by use of a form prompted by this court's precedent, attached as an appellate exhibit,

reviewed by the judge with appellant on the record, and endorsed by appellant on the record.  *See Fordyce*, 69 M.J. at 504 n.2, 505–06.

On the most relevant part of the PTAR form, for purposes of this case, appellant indicated the following:

12. I have read and had my post-trial rights explained to me by counsel and **I acknowledge these rights and *make the elections set forth below***.

a.  I understand my post-trial and appellate rights.

b.  I understand that a copy of the authenticated record of trial will be served on me, or if I so request, will be forwarded to my defense counsel pursuant to RCM 1104(b).

*Select only one of the following three numbered options. Option (3) is the recommended best option in most cases.*

. . . .

(3) I want the record of trial sent to me AND I request that my defense counsel CPT [MF] be provided a copy at the same time I receive my copy in order to expedite preparation of post-trial matters.

c.  I further understand that individual copies of the staff judge advocate's post trial recommendation will be served on me and my defense counsel pursuant to RCM 1106(f).

d.  My defense counsel, CPT [MF], will submit R.C.M. 1105 and 1106 matters in my case if I desire.  I further understand that I must stay in contact with this counsel to assist him in collecting and preparing the matters for submission.

e.  . . .  **I do want to request deferment of automatic and adjudged forfeitures**.

f.  . . **. I do not want to request deferment of an adjudged reduction in rank**.

g.  . . .  **I do not request my defense counsel to petition the convening authority to waive automatic forfeitures** . . . .

> h. . . . **If sentenced to confinement, I want my defense counsel to request deferment of confinement**.

(App. Ex. VI) (boldface emphasis added).

The record reveals neither submission of any requests for deferment to the convening authority nor indication that appellant either withdrew or decided against submitting any request. Rather than accept the record, the majority creates a moment "fixed in time" outside of which appellant's election to request deferment of automatic and adjudged forfeitures loses any meaning. Appellant's understanding of his post-trial and appellate rights are not so fixed in time as the majority relies on the remainder of the form to establish that understanding. In any event, despite this record, the majority requires appellant to submit an affidavit swearing that he meant what he said on the record in order to properly allege the error here. *Contra Ellis*, 42 M.J. at 22; *Gunderman*, 67 M.J. at 686.

The majority's worry over invasion of the attorney-client privilege, absent an affidavit from appellant averring ineffective assistance of counsel is also misplaced. First, as just described, the record contains information sufficient to establish a deficiency on part of defense counsel. *See United States v. Melson*, 66 M.J. 346, 350–51 (C.A.A.F. 2008); *United States v. Lewis*, 42 M.J. 1, 5–6 (C.A.A.F. 1995). The majority relies on the *Ellis* decision; however, as stated above, that court based its decision on the lack of any evidence of deficiency in the record and it also based its decision on the fact that "there was no assertion that trial defense counsel acted contrary to appellant's desires." *Ellis*, 47 M.J. at 21–22. Here there is evidence of deficiency and appellant bluntly asserts that his trial defense counsel acted contrary to his explicit direction—an explicit election that appellant made on the record in the exact fashion this court previously recommended in order to obviate the need for the sort of litigation we see in this case. *Fordyce*, 69 M.J. at 504 n.2.

Secondly, defense counsel is not gagged by the fact that appellant has not formally stylized his assertion as ineffective assistance of counsel. Appellant waived the attorney-client privilege as to the deferment issue by asserting that "[h]is trial defense counsel failed to submit [his request for deferment] to the convening authority as directed" with proper support from the record.[1] This effectively asserts a breach of duty. There is no lawyer-client privilege "[a]s to a communication relevant to an issue of breach of duty by the lawyer to the client." Mil. R. Evid. 502(d)(3). "A lawyer may reveal such information to the extent the lawyer

---

[1] Waiver of the lawyer-client privilege does not require averment couched in any particular legal framework such as "ineffective assistance of counsel." *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 502.

reasonably believes necessary . . . to respond to allegations in any proceeding concerning the lawyer's representation of the client." Army Reg. 27-26, Legal Services: Rules of Professional Conduct for Lawyers, Rule 1.6(c) (1 May 1992). Therefore, this court may lawfully order appellant's defense counsel to submit an affidavit to address appellant's allegation. *See Melson*, 66 M.J. at 350–51.

However, we need not do so. Following *Fordyce*, we may find deficiency in the government's post-trial handling of appellant's case. In receipt of appellant's requests for deferment included on Appellate Exhibit VI (the PTAR), and absent any further supporting documents from the defense, the SJA should at a minimum present the request to the convening authority with a recommendation for approval or disapproval in his addendum to the post-trial recommendation. Upon review of the record of trial, including the PTAR, and absent any follow-up from defense counsel, the SJA should ascertain from the defense whether any follow-up documentation is forthcoming and convey that, if not, the request would be presented to the convening authority with recommendation as is, unless, of course, withdrawal of the request is indicated. *Fordyce*, 69 M.J. at 504; R.C.M. 1101(c); 1107 (b)(3)(A)(iii).

Of course, the defense counsel should not leave the record silent in light of a client's explicit election to request deferment. At a minimum, counsel should either submit documents supporting the request, indicate in the record that no further documents in support will be provided, or that, despite the earlier election, his client withdraws his request for deferment.[2] *Fordyce*, 69 M.J. at 505. Then, indeed, the presumption of defense counsel's competence goes undisturbed.

These are minimal burdens on defense and government. Fulfillment of this expectation perfects the record, upholds and maintains certain minimal professional standards, ensures the proper process and respect for appellant's post-trial interests, and, when fulfilled, obviates the need for any order and adjudication of potentially competing affidavits.

Rather than protect and enforce the integrity of the record, the majority here invites the unnecessary delay and litigation historically associated with these matters by requiring appellant to submit an affidavit.

This case should be decided on the absence of prejudice. The majority seems to acknowledge that an appellant might be able to show prejudice on a record such

---

[2] It should also be understood that while nothing requires an accused to make an explicit election on the record, once the record of an accused's choice is made counsel must complete his duty.

as this but the opinion does not address the matter. While the threshold is low, appellant must still make a colorable showing of possible prejudice. *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999). While that may indeed be by affidavit, it may also be by reference to the record. *See Fordyce*, 69 M.J. at 504; *Gunderman*, 67 M.J. at 687–88. Here appellant makes absolutely no showing of possible prejudice. There is nothing in the record to suggest that appellant might offer any sufficient rationale to support any such request to the convening authority, for example, dependent needs, etc. *See, e.g.*, *Fordyce*, 69 M.J. at 504. Devoid of any allegation or record of such possible prejudice, appellant's complaint lacks merit and should be rejected. *Id.*

Therefore, I concur in the result.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court